UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ENDURANCE AMERICAN SPECIALTY INSURANCE
COMPANY and HAYDEN BUILDING MAINTENANCE
CORPORATION,

          Plaintiffs,

    -against-

CENTURY SURETY COMPANY,

          Defendants,

400 COLUMBUS, LLC, AHEARN HOLTZMAN, INC.
d/b/a SEABOARD WEATHERPROOFING AND
RESTORATION CO., PINNACLE CONSTRUCTION
AND RENOVATION CORP., ARTUR SLESZYNSKI
and KAROLINA SLESZYNSKI,

          Nominal Defendants
------------------------------------------------------------X

Civ. No.: 1:13-cv-05538-HB

**RULE 56.1 STATEMENT
OF UNDISPUTED FACTS**

Pursuant to Rule 56.1 of the Rules of the United States District Courts for the Southern and Eastern Districts of New York, plaintiffs ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY ("Endurance") and HAYDEN BUILDING MAINTENANCE CORPORATION ("Hayden"), by their attorneys, WHITE FLEISCHNER & FINO, LLP, provide the following statement of material facts to which Endurance and Hayden contend there is no genuine issue to be tried.

Endurance and Hayden also refer below to the following exhibits attached hereto, which represent true and correct copies, or portions thereof, of the documents:

    Exhibit A:  Plaintiffs' Complaint
    Exhibit B:  Plaintiffs' Amended Complaint
    Exhibit C:  Defendant's Notice of Removal
    Exhibit D:  Defendant's Answer to Amended Complaint
    Exhibit E:  Plaintiffs' Reply to Defendant's Counterclaim
    Exhibit F:  Underlying Sleszynski Lawsuit

    Exhibit G:  Deposition transcript of Artur Sleszynski
    Exhibit H:  Pinnacle/Hayden Master Subcontract
    Exhibit I:   Construction contract between Seaboard and Hayden
    Exhibit J:   Construction contract between Hayden and Pinnacle
    Exhibit K:  Endurance Policy
    Exhibit L:   Century Policy
    Exhibit M:  Tender to Century
    Exhibit N:  Century's Denial letter
    Exhibit O:  Century's Supplemental Denial letter

### Procedural History

1. Plaintiffs commenced this action by filing a Summons & Complaint in the Supreme Court of the State of New York, County of New York on May 3, 2014 against defendant Century Insurance Group and nominal defendants, 400 Columbus LLC, Ahearn Holtzman Inc. d/b/a Seaboard Weatherproofing and Restoration Co., Pinnacle Construction and Renovation Corp. ("Pinnacle"), Artur Sleszynski and Karolina Sleszynski seeking a declaration that Century is obligated to provided defense and indemnification to Hayden as an additional insured under its Policy issued to Pinnacle for the lawsuit entitled *Artur Sleszynski and Karolina Sleszynski v. 400 Columbus, LLC and Hayden Building Maintenance Corporation*, Index No. 12493/2012 ("Underlying Sleszynski Lawsuit"). **(Exhibit A)**

2. Plaintiffs filed a Supplemental Summons and Amended Complaint on or about May 13, 2013, which contained the same factual allegations but corrected the name of defendant from Century Insurance Group to Century Surety Company ("Century"). **(Exhibit B)**

3. The instant action concerns insurance coverage for a lawsuit entitled *Artur Sleszynski and Karolina Sleszynski against 400 Columbus LLC and Hayden Building Maintenance Corporation, Index No. 12493/2012, currently pending in the Supreme Court of the State of New York, County of Queens* (the "Underlying Sleszynski Lawsuit"). See generally, Exhibit B.

4. On or about August 6, 2013, defendant Century filed a Notice of Removal to this court. (**Exhibit C**)

5. On or about August 19, 2013, defendant Century filed an Answer generally denying the allegations in the Amended Complaint and asserting various affirmative defenses and counterclaims. (**Exhibit D**)

6. On or about September 6, 2013, Plaintiff's filed a Reply generally denying the allegations in defendant Century's counterclaims. (**Exhibit E**)

**Underlying Sleszynski Lawsuit**

7. On or about June 14, 2012, Artur Sleszynski commenced the Underlying Sleszynski Lawsuit in the Supreme Court of the State of New York, County of Queens in which he seeks recovery for personal injuries allegedly sustained on September 10, 2011, while working on the roof of 400 Columbus Avenue in Valhalla, New York. (**Exhibit F**)

8. The Underlying Plaintiff alleges that on September 10, 2011, he was working at the aforesaid property, building and structure, and more specifically, while on the roof, he was caused to fall due to the uneven, dilapidated, defective and obstructed roof as well as the lack and/or inadequacy of safety devices and, as a result, sustained serious and permanent personal injuries. See Exhibit F ¶ 34.

9. The Underlying Plaintiff Sleszynski was working as a foreman and employee of Pinnacle at the time of the alleged accident. See Transcript of the Deposition of Artur Sleszynski, taken September 13, 2013 ("Sleszynski Dep. Tr."), page 26, annexed as **Exhibit G**.

10. The Underlying Plaintiff testified that the accident occurred on September 10, 2011. *Id.* at p.29. By that time Pinnacle had already been at the 400 Columbus Avenue project for about three weeks and Pinnacle was about halfway through the project. *Id.* at pp.69-70.

Another crew had already ripped off the old roof and Pinnacle's job was to replace the roof and make a new roof. Id. The roof was not complete on the day of the alleged accidnet. *Id.* at p.70.

11.     On the morning of the accident, Plaintiff Sleszynski began his day at 6:30 a.m. or 7 a.m. by picking up workers in the company van and bringing them to the job site. *Id.* at pp.67-68. Plaintiff began working with 5 men: himself, his father and three others. *Id.* at p.71. He was painting metal paneling walls. *Id.* at p.69. In addition, part of his duties as foreman was to watch over all of the people on the roof. *Id.* at p.81. Plaintiff's father was also working on the roof and he came to him and asked him to bring more materials from where they were kept on the ground up to the roof. *Id.* When Plaintiff finished talking to his father he started walking down to the ladder and that is when he slipped. *Id.* at p.82.

## Hayden-Pinnacle Master Subcontract

12.     On January 24, 2011, Hayden and Pinnacle entered into an Independent Contractor Agreement that applied to all Hayden jobsites. A copy of this contract is annexed hereto as **Exhibit H**. See also Exhibit G, pages 88-90 (explaining that Pinnacle often took work from Hayden).

13.     The Agreement is signed by Roman Oleynik, the President of Pinnacle. See Exhibit H.

14.     The Agreement Contained the following Insurance Indemnification Rider:

> *Prior to commencement of any work under any contract with Hayden Building Maintenance Corporation ("Contractor") and until completion and final acceptance of the work, Pinnacle Const. and Renovation Corp. ("Subcontractor") shall, at Its sole expense, maintain the following insurance on its own behalf. The Subcontractor will also furnish to Hayden Building Maintenance Certificates of Insurance evidencing it and reflecting the effective date of such coverage as follows:*
>
> *The term "Subcontractor" as used in this insurance rider shall mean and include Subcontractors of every tier.*
>
> \*\*\*

B. *Commercial General Liability with a combined bodily injury and Property Damage limit of not less then One Million ($1,000,000) Dollars per occurrence and TWO Million ($2,000,000) Dollars in the aggregate. The aggregate must be applicable on a per project basis. Coverage must include the following perils:*

   1. *Broad form Blanket Contractual Liability for liability assumed under all written contracts with Contractor.*

   2. *Completed Operations I Products Liability*

   3. *Broad Form Property Damage*

   4. *Personal Injury Liability*

   5. *Independent Contractors*

   6. *A copy of the blanket additional insured endorsement should be attached. In the absence of such, endorsements must be furnished reflecting the inclusion of the interests of the Owner, Construction Manager, General Contractor, Contractor, their officers, directors, partners, representatives, agents and employees, and **naming each as an additional insured.***

   7. ***Coverage is to be endorsed to reflect that the Owner, General Contractor, and Contractor are to be named as additional insureds.***

   8. *Coverage is to be provided on an "occurrence"; basis with carriers A-rated by A.M. Best.*

   9. *A copy of policy and/or endorsement(s) and any other documents required to verify such insurance are to be submitted with the appropriate certificate( s ), or upon request of Contractor. Failure to provide these documents is not to be construed as a waiver of the requirements to provide such insurance.*

\*\*\*

*HOLD HARMLESS:*

*To the fullest extent permitted by law, Subcontractor will indemnify and hold harmless Contractor and Owners, their officers, directors, partners, representatives, agents and employees from and against any and all claims, suits, liens, judgments, damages, losses and expenses, including legal fees and all court costs and liability (including statutory liability) arising in whole or in part and in any manner from injury and/or death of person or damage to or loss of any property resulting from the acts, omissions, breach or default of Subcontractor pursuant to any contract Purchase Order and/or related Proceed Order, except those claims, suits, liens, judgments, damages, losses and expenses caused by the negligence of Contractor. Subcontractor will defend and bear all costs of defending any actions or proceedings brought against Contractor and/or Owners, their officers, directors, agents, and employees, arising in whole or part out of any such acts, omission, breach, or default. The foregoing indemnity shall include injury or death of any employee of the Contractor or Subcontractor and shall not be limited in any way by and amount or type of damage, compensation or benefits payable under any applicable Workers Compensation, Disability Benefits or other similar employees benefit act.*

> *The Subcontractor hereby expressly permits the General Contractor to pursue and assert claims against the Subcontractor for indemnity, contribution and common law negligence arising out of claims for damages for death and personal injury.*

See Exhibit H.

## 400 Columbus Avenue Project

15.  400 LLC entered into a contract with Seaboard to perform services at 400 Columbus Avenue, Valhalla, NY.  See generally, Exhibit I.

16.  On or about June 29, 2011, Seaboard entered into a subcontract with Hayden for work at 400 Columbus Avenue, Valhalla, NY.  **(Exhibit I)**

17.  Hayden, in turn, entered into a sub-subcontract with Pinnacle.  **(Exhibit J)**

## Endurance Policy

18.  Endurance issued Policy No. GLP100033481000 to Hayden Building Maintenance Corporation for the policy period of September 1, 2011 to September 1, 2012. **(Exhibit K)**

19.  The Endurance Policy contains the following Other Insurance Provision, which provides that when there is other insurance available to Hayden as an additional insured, coverage under the Endurance Policy will be excess:

> ***SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS***
>
> \*\*\*
>
> **4.   *Other Insurance***
>
> > *If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B of this Coverage Part, our obligations are limited as follows:*
> >
> > **a.   *Primary Insurance***
> >
> > > *This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c.** below.*
> >
> > **b.   *Excess Insurance***

*(1)* *This insurance is excess over:*

    *(a)* *Any of the other insurance, whether primary, excess, contingent or on any other basis:*

        *(i)* *That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";*

        *(ii)* *That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;*

        *(iii)* *That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or*

        *(iv)* *If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.*

    *(b)* *Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.*

*(2)* *When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.*

*(3)* *When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:*

    *(a)* *The total amount that all such other insurance would pay for the loss in the absence of this insurance; and*

    *(b)* *The total of all deductible and self-insured amounts under all that other insurance.*

*(4)* *We will share the remaining loss, if any, with any other insurance that is not described in the Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.*

> c. *Method Of Sharing*
>
> *If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.*
>
> *If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.*

See Exhibit K, page 40.

## The Century Policy

20. Century issued Policy No. CCP710261 (the "Century Policy") to Pinnacle Construction and Renovation Corp. for the policy period of May 18, 2011 through May 18, 2012. **(Exhibit L)**

21. The Century Policy contains the following Additional Insured Endorsement:

> ***THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.***
>
> ***ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU***
>
> *This endorsement modifies insurance provided under the following:*
>
> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*
>
> ***A.***     ***Section II - Who Is An Insured*** *is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:*
>
> > *1.     Your acts or omissions; or*
> >
> > *2.     The acts or omissions of others acting on your behalf;*
>
> *In the performance of your ongoing operations for the additional insured.*
>
> *A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.*
>
> ***B.***     *With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:*

*This insurance does not apply to:*

1. *"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:*

    a. *The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or*

    b. *Supervisory, inspection, architectural or engineering activities.*

2. *"Bodily injury" or "property damage" occurring after:*

    a. *All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or*

    b. *That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.*

See Exhibit L, page 58.

22.  The Century Policy contains the following Action Over Exclusion, which amends the Employer's Liability Exclusion:

***THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.***

***ACTION OVER EXCLUSION***

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*It is agreed that the following change is made to Coverage A. 2. Exclusions:*

*Exclusion  e. **Employer's Liability** is deleted in its entirety and replaced with the following:*

***e. Employer's Liability***

  *"Bodily injury" to:*

  *(1) An "employee" of the named insured arising out of and in the course of:*

    *(a) Employment by the named insured; or*

    *(b) Performing duties related to the conduct of the named insured's business; or*

   *(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.*

   *This exclusion applies:*

   *(1) Whether the named insured may be liable as an employer or in any other capacity; and*

   *(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.*

See Exhibit L, page 65.

  23.  In addition, the Century Policy contains the following amended Other Insurance Conditions:

   ***THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.***

   ***CONTRACTORS AMENDATORY ENDORSEMENT***

   *This endorsement modifies insurance provided under the following:*

   *COMMERCIAL GENERAL LIABILITY COVERAGE PART*

   *In consideration of the premium charged the following changes are made to this policy:*

   *A. It is agreed that **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is changed as follows:*

   *1. Item **4. Other Insurance** is deleted and entirely replaced by the following:*

   ***Other Insurance***

   *If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:*

    *a. This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.*

    *b. When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.*

    *c. When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:*

     *(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and*

>   (2) The total of all deductible and self insured amounts under all that other insurance.

See Exhibit L, page 35.

### Tender to Century

24. On or about July 20, 2012, Rockville Risk Management, the Third Party Administrator for Endurance, on behalf of Hayden and 400 LLC, tendered to Century for additional insured coverage, defense and indemnification. (**Exhibit M**)

25. On or about August 22, 2012, Century sent a letter to Rockville, Hayden and 400 LLC denying the request for additional insured coverage. See Exhibit N.

26. Following this offices' dispute of the denial, on or about November 13, 2012, Century issued a Supplemental Disclaimer of Coverage. (**Exhibit N**)

27. In the Supplemental Disclaimer letter, Century acknowledged that its Named Insured, Pinnacle, entered into an agreement in which it agreed to procure additional insured coverage for Hayden and that Hayden may qualify as an additional insured if the Underlying Plaintiff's injuries were caused in whole or in part by Pinnacle. (**Exhibit O**)

Respectfully Submitted,

WHITE FLEISCHNER & FINO, LLP

*/s/ Sharon Moreland*

SHARON B. MORELAND
Counsel for Plaintiffs,
Endurance American Specialty Insurance Company
and Hayden Building Maintenance Corporation
61 Broadway - 18th Floor
New York, New York 10006
(212) 487-9700
Our File No.: 492-16719L