UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ENDURANCE AMERICAN SPECIALTY            :
INSURANCE COMPANY and HAYDEN
BUILDING MAINTENANCE CORPORATION,       :

                  Plaintiffs,            :            13 Civ. 5538 (AJP)

             -against-            :            **OPINION & ORDER**

CENTURY SURETY COMPANY,                 :

              Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiffs Endurance American Specialty Insurance Company and Hayden Building

Maintenance Corporation bring this diversity action against defendant Century Surety Company

seeking a declaratory judgment that Century is obligated to defend and indemnify Hayden in an

underlying state court action.  (Dkt. No. 15: Am. Compl. ¶¶ 24-36.)  Century counter-claims for a

declaratory judgment that it is not obligated to defend and indemnify Hayden (Dkt. No. 2: Ans. &

Countercl. ¶¶ 24-39), or in the alternative, that Century's coverage of Hayden is excess over

Endurance's coverage (Ans. & Countercl. ¶ 40).

        Presently before the Court are the parties' cross-motions for summary judgment.

(Dkt. No. 18: Pls. Notice of Motion; Dkt. No. 22: Century Notice of Cross-Motion.)  The parties

have consented to decision of these motions by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

(Dkt. No. 10: 11/15/13 Consent Notice.)

        For the reasons set forth below, plaintiffs' motion (Dkt. No. 18) is <u>GRANTED</u> with

respect to Endurance's claim for a declaratory judgment that Century is obligated to defend and

2

indemnify Hayden in the underlying action and that the Endurance and Century policies share ratably. Century's motion (Dkt. No. 22) is <u>DENIED</u> with respect to its counter-claim for a declaratory judgment that its policy coverage is excess to Endurance's.

## FACTS

### The Parties

Hayden is a contractor who contracted to perform construction services on a project at 400 Columbus Avenue in Manhattan ("Columbus Ave. project"). (Dkt. No. 19: Rule 56.1 Stmt. ¶¶ 15-16 & Ex. I: Seaboard-Hayden Purchase Order.)[1/] Pinnacle contracted with Hayden to perform roofing work on the Columbus Ave. project. (Rule 56.1 Stmt. ¶¶ 12, 17 & Ex. J: Hayden-Pinnacle Sub-Purchase Order; <u>see</u> Rule 56.1 Stmt. Ex. G: Hayden-Pinnacle Master Sub-Contract.)[2/] Artur Sleszynski, the plaintiff in the underlying state court action, was a Pinnacle employee who sustained personal injuries while working on the roof at the Columbus Ave. project on September 10, 2011. (Rule 56.1 Stmt. ¶¶ 3, 7-11.)

Endurance issued a commercial general liability policy to Hayden for the period of September 1, 2011 to September 1, 2012. (Rule 56.1 Stmt. ¶ 18 & Ex. K: Endurance Policy.) Century issued a commercial general liability policy to Pinnacle for the period of May 18, 2011 to May 18, 2012. (Rule 56.1 Stmt. ¶ 20 & Ex. L: Century Policy.)

---

[1/]   References to "Ex." are to the exhibits to plaintiffs' Rule 56.1 Stmt. (Dkt. Nos. 19 & 21.) Century admits the statements in plaintiffs' Rule 56.1 Stmt. (<u>See</u> Dkt. No. 27: Century Br. at 2-3; <u>see also</u> Dkt. No. 20: Pls. Br. at 1 n.1: "Counsel for Defendant Century Surety Company has reviewed the Rule 56.1 Statement and stipulates to the facts therein.")

[2/]   Plaintiffs' Rule 56.1 Stmt. refers to it as "Ex. H" but it actually is Ex. G.

**The Agreements**

**Hayden and Pinnacle Sub-Contracts**

On January 24, 2011, Hayden and Pinnacle entered into an Independent Contractor Agreement that applied to all Hayden job sites.  (Dkt. No. 19: Rule 56.1 Stmt. ¶ 12 & Ex. G: Hayden-Pinnacle Master Sub-Contract.)  The Agreement contains an Insurance Indemnification Rider, which states as follows:

> Prior to commencement of any work under any contract with Hayden Building Maintenance Corporation ("Contractor") and until completion and final acceptance of the work, Pinnacle Cons. & Renov. Corp. ("Subcontractor") shall, at its sole expense, maintain the following insurance on its own behalf.  The Subcontractor will also furnish to Hayden Building Maintenance Certificates of Insurance evidencing it and reflecting the effective date of such coverage as follows:
>
> . . . .
>
> A.    Workers' Compensation and Occupations Disease Insurance in accordance with the applicable law or laws. . . .
>
> B.    Commercial General Liability with a combined bodily injury and Property Damage limit of not less then One Million ($1,000,000) Dollars per occurrence and TWO Million ($2,000,000) Dollars in the aggregate.  The aggregate must be applicable on a per project basis.  Coverage must include the following perils:
>
> 1.    Broad form Blanket Contractual Liability for liability assumed under all written contracts with Contractor.
> 2.    Completed Operations / Products Liability
> 3.    Broad Form Property Damage
> 4.    Personal Injury Liability
> 5.    Independent Contractors
> 6.    A copy of the blanket additional insured endorsement should be attached.  In the absence of such, endorsements must be furnished reflecting the inclusion of the interests of the Owner, Construction Manager, General Contractor, Contractor, their officers, directors, partners, representatives, agents and employees, and <u>naming each as an additional insured.</u>
> <u>7.</u>    <u>Coverage is to be endorsed to reflect that the Owner, General Contractor, and Contractor are to be named as additional insureds.</u>

8.      Coverage is to be provided on an "occurrence"; basis with carriers A-rated by A.M. Best.

9.      A copy of policy and/or endorsement(s) and any other documents required to verify such insurance are to be submitted with the appropriate certificate(s), or upon request of Contractor.  Failure to provide these documents is not to be construed as a waiver of the requirements to provide such insurance.

. . . .

HOLD HARMLESS:

To the fullest extent permitted by law, <u>Subcontractor will indemnify and hold harmless Contractor</u> and Owners, their officers, directors, partners, representatives, agents and employees <u>from and against any and all claims, suits, liens, judgments, damages, losses and expenses, including legal fees and all court costs and liability</u> (including statutory liability) arising in whole or in part and in any manner from injury and/or death of person or damage to or loss of any property resulting from the acts, omissions, breach or default of Subcontractor pursuant to any contract Purchase Order and/or related Proceed Order, <u>except those claims, suits, liens, judgments, damages, losses and expenses caused by the negligence of Contractor.  Subcontractor will defend and bear all costs of defending any actions or proceedings brought against Contractor and/or Owners, their officers, directors, agents, and employees, arising in whole or part out of any such acts, omission, breach, or default.</u>  The foregoing <u>indemnity shall include injury or death of any employee of the Contractor or Subcontractor</u> and shall not be limited in any way by and amount or type of damage, compensation or benefits payable under any applicable Workers Compensation, Disability Benefits or other similar employees benefit act.

The Subcontractor hereby expressly permits the General Contractor to pursue and assert claims against the Subcontractor for indemnity, contribution and common law negligence arising out of claims for damages for death and personal injury.

(Ex. G: Hayden-Pinnacle Master Sub-Contract, Ins. Indemnification Rider, emphasis added to Hold Harmless clause.)

On August 16, 2011, Pinnacle contracted with Hayden to perform the roofing work on the Columbus Ave. project.  (Rule 56.1 Stmt. ¶ 17 & Ex. J: Hayden-Pinnacle Sub-Purchase Order.)  The contract states: "The terms and conditions of this Purchase Order are the terms and conditions set forth in the Master Subcontract Agreement – All States executed by Hayden Building

5

Maintenance Corp. and Subcontractor.  Those terms and conditions are incorporated by reference as if fully set forth herein."  (Ex. J: Hayden-Pinnacle Sub-Purchase Order.)

**Century's Commercial General Liability Policy**

Century issued a Commercial General Liability Policy to Pinnacle for the period of May 18, 2011 to May 18, 2012.  (Dkt. No. 19: Rule 56.1 Stmt. ¶ 20 & Ex. L: Century Policy.)  Section I of the Commercial General Liability Coverage Form describes Century's obligations under the policy for "bodily injury" claims.  (Ex. L: Century Policy at 19-20.)[3/]  Section I also contains a list of exclusions—categories of bodily injury that are not covered by Century's insurance policy—including an "Employer's Liability" exclusion (id.) as modified by an "Action Over Exclusion" endorsement, which states:

It is agreed that the following change is made to Coverage A. 2. Exclusions:

Exclusion **e. Employer's Liability** is deleted in its entirety and replaced with the following:

**e. Employer's Liability**

"Bodily injury" to:

**(1)**    An "employee" of the named insured arising out of and in the course of:

**(a)**    Employment by the named insured; or

**(b)**    Performing duties related to the conduct of the named insured's business; or

**(2)**    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

---

[3/]    References to pages of the insurance policies are to the ECF-generated pagination.

6

> **(1)**      Whether the named insured may be liable as an employer or in any other capacity; and
>
> **(2)**      To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Ex. L: Century Policy, Employer's Liability Exclusion Endorsement at 65, emphasis added.)

In relevant part, the preamble provides the meaning of select words as used throughout Century's policy:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

(Ex. L: Century Policy at 19.)  The policy's Declarations indicate as follows: "**NAMED INSURED:** Pinnacle Construction & Renovation Corp.**"**  (Ex. L: Century Policy at 17-18.)

Section II of the policy, "Who Is An Insured," is modified by the following endorsement:

### ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

> **A.**      **Section II – Who Is An Insured** is <u>amended to include as an additional insured any person or organization for whom you are performing operations</u> when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  <u>Such person or organization is an</u>

<u>additional insured</u> only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

(Ex. L: Century Policy, Additional Insured Endorsement at 58, emphasis added.)

Section IV, which lists the commercial general liability conditions, contains a "Separation of Insureds" provision that provides:

**7.  Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.**  As if each Named Insured were the only Named Insured; and

**b.**  Separately to each insured against whom claim is made or "suit" is brought.

(Ex. L: Century Policy at 30.)

Section IV also contains an "Other Insurance" clause, which is modified by a "Contractors Amendatory Endorsement" that states:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of the premium charged the following changes are made to this policy:

**A.**    It is agreed that **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is changed as follows:

**1.**    Item **4. Other Insurance** is deleted and entirely replaced by the following:

**Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a.      This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

b.      When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

c.      When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

(1)      The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)      The total of all deductible and self insured amounts under all that other insurance.

(Ex. L: Century Policy, Contractors Amendatory Endorsement at 35.)

### **Endurance's Commercial General Liability Policy**

Endurance issued a Commercial General Liability Policy to Hayden for the period of September 1, 2011 to September 1, 2012.  (Dkt. No. 19: Rule 56.1 Stmt. ¶ 18 & Ex. K: Endurance Policy.)  Section IV, which lists the commercial general liability conditions, contains the following "Other Insurance" provision:

### **4.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.**   **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.**   **Excess Insurance**

**(1)**   This insurance is excess over:

. . . .

**(b)**   Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)**   When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)**   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)**   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)**   The total of all deductible and self-insured amounts under all that other insurance.

**(4)**   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.**   **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(Ex. K: Endurance Policy at 69-70, emphasis added.)

**The Underlying Sleszynski State Court Action**

On June 14, 2012, Pinnacle employee Artur Sleszynski and his wife commenced a personal injury action in Supreme Court, Queens County, against Hayden and 400 Columbus, LLC ("Sleszynski Action" or the "Underlying Action").  (Dkt. No. 19: Rule 56.1 Stmt. ¶¶ 3, 7 & Ex. F: Sleszynski Compl.)  Sleszynski alleged that on September 10, 2011, he sustained injuries when, inter alia, Hayden's negligence caused Sleszynski to fall while working on the roof at the Columbus Ave. project.  (Rule 56.1 Stmt. ¶¶ 7-11 & Ex. F: Sleszynski Compl. ¶¶ 33-41.)  According to eCourts, the New York State Unified Court System's case information system, the Sleszynski Action was stayed by stipulation on November 6, 2013.  See New York State Unified Court System, eCourts, https://iapps.courts.state.ny.us/webcivil/FCASMain, Case Number 012493/2012 (last visited Sept.15, 2014).[4/]

**This Action and the Parties' Cross-Motions for Summary Judgment**

Endurance and Hayden commenced this action in Supreme Court, New York County, on May 3, 2013, and amended the complaint to correct defendant Century's name on May 13, 2013.  (See Dkt. No. 19: Rule 56.1 Stmt. ¶¶ 1-2 & Ex. A: Compl.)  Endurance and Hayden seek a

---

[4/]   See also, e.g., Caruso Glynn, LLC v. Sai Trust, 11 Civ. 4360, 2012 WL 4053802 at *6 (S.D.N.Y. July 9, 2012) (taking judicial notice of case information retrieved from eCourts).

declaratory judgment obliging Century to defend and indemnify Hayden in the Sleszynski Action. (Rule 56.1 Stmt. ¶ 1; Dkt. No. 15: Am. Compl. ¶¶ 24-36.)[5/]

On August 6, 2013, Century removed the action to this Court on the basis of diversity.  (Rule 56.1 Stmt. ¶ 4 & Ex. C.)  On August 19, 2013, Century answered the amended complaint, asserting various affirmative defenses and counterclaims, including that: (1) the Employer's Liability exclusion bars any claims for coverage under the Century Policy, and (2) in the alternative, any coverage available under the Century policy is excess to any other insurance. (Dkt. No. 2: Ans. & Countercl. ¶¶ 24-28, 40 & Wherefore ¶¶ 2-3.)

The parties cross-moved for summary judgment on March 12 and April 9, 2014.  (Pls. Notice of Motion; Dkt. No. 22: Century Notice of Cross-Motion.)

The parties agree that determination of Century's obligations to Hayden in the Sleszynski Action turns on the language of the Employer's Liability exclusion.  (See Dkt. No. 27: Century Br. at 2: "There is no dispute that Hayden qualifies as an additional insured under the Century Policy.  The dispute . . . centers on whether Hayden is entitled to coverage in the Underlying Action as the Century Policy contains an endorsement which precludes coverage to any insured under the Century Policy where the injured party was 'an employee of the named insured,'

---

[5/]    The amended complaint asserts three causes of action: (1) a declaratory judgment claim seeking a declaration that Century is obligated to defend Hayden in the Sleszynski Action; (2) a breach of contract claim seeking an award against Century to reimburse Endurance for the costs incurred in defending the Sleszynski Action to date; and (3) a declaratory judgment claim seeking a declaration that Century is obligated to indemnify Hayden in the Sleszynski Action.  (Am. Compl. ¶¶ 24-36.)  While the second cause of action is styled as one for breach of contract, it appears that what plaintiffs actually seek is a declaration that Century is obligated to reimburse Endurance for the costs incurred in defending the Sleszynski Action to date, as opposed to an actual damages award.  (See Am. Compl. ¶ 34; see also Dkt. No. 18: Pls. Notice of Motion ¶ 2 (seeking a declaration that "Century Surety Company is obligated to reimburse Endurance for all defense fees and costs incurred and paid on behalf of Hayden to date in the Underlying Sleszynski Lawsuit").)

and whether, if this exclusion does not apply, Century must provide coverage to Hayden on a primary basis.") Plaintiffs argue that the Century policy exclusion reference to employees of "the named insured" is ambiguous under the present circumstances, and that when read together with the Separation of Insured's clause and upon consideration of the purpose behind the Employer's Liability exclusion, the ambiguity should be resolved in favor of Hayden and against Century.  (Dkt. No. 20: Pls. Br. at 9-15; Dkt. No. 29: Pls. Reply Br. at 1-4.)  Century responds that "the named insured" clearly and unambiguously refers to Pinnacle, since it is the only insured named in the policy's Declarations, and since Hayden is expressly added as an "additional" insured.  (Century Br. at 9-12; Dkt. No. 32: Century Reply Br. at 1-5.)

In the event the Court concludes Hayden's coverage is not excluded by Century's exclusion, the parties also present opposing arguments as to whether the "Other Insurance" provisions in the Century and Endurance policies render Century's coverage primary or excess. (Century Br. at 13-19; Pls. Reply Br. at 5-7; Century Reply Br. at 5-6.)

## ANALYSIS

### I.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013), petition for cert. filed, --- U.S.L.W. ---- (Mar. 1, 2014) (No. 13-10094); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed."  Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 546 F. App'x at 54; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[6]

---

[6]     See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49
(continued...)

The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987).  To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.  While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

When, as here, there are cross-motions for summary judgment:

> The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . .  Moreover, even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.  Rather, each party's motion must be examined

---

6/      (...continued)
(2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 546 F. App'x at 54; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.

Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).[7]

## II.   STANDARDS FOR CONTRACT INTERPRETATION (INCLUDING INSURANCE POLICY CONTRACTS) UNDER NEW YORK LAW[8]

"Under New York law 'the initial interpretation of a contract is a matter of law for the court to decide.'  Included in this initial interpretation is the threshold question of whether the

---

[7]   Accord, e.g., Parent v. New York, 485 F. App'x 500, 503 (2d Cir.), cert. denied, 133 S. Ct. 652 (2012); Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011); Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010); Bronx Household of Faith v. Bd. of Educ. of N.Y., 492 F.3d 89, 96 (2d Cir. 2007); Barhold v. Rodriguez, 863 F.2d 233, 236 (2d Cir. 1988); Eastman Mach. Co. v. United States, 841 F.2d 469, 473-74 (2d Cir. 1988); Echevvaria v. Diversified Consultants, Inc., 13 Civ. 4980, 2014 WL 929275 at *3 (S.D.N.Y. Feb. 28, 2014) (Peck, M.J.); Charron v. Sallyport Global Holdings, Inc., 12 Civ. 6837, 2014 WL 464649 at *2 (S.D.N.Y. Feb. 3, 2014); BMC–Benchmark Mgmt. Co. v. V3 231, LLC, 12 Civ. 7921, 2013 WL 5420982 at *4 (S.D.N.Y. Sept. 27, 2013); Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 250-51 (S.D.N.Y. 2011) (Peck, M.J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 618 F. Supp. 2d 280, 291 (S.D.N.Y. 2009); Alfano v. CIGNA Life Ins. Co., 07 Civ. 9661, 2009 WL 222351 at *13 (S.D.N.Y. Jan. 30, 2009) (Lynch, D.J.); Revlon Consumer Prods. Corp. v. Estee Lauder Cos., 00 Civ. 5960, 2003 WL 21751833 at *7 (S.D.N.Y. July 30, 2003) (Peck, M.J.).

[8]   While the Century and Endurance insurance policies do not explicitly state they are governed by New York law, Hayden argues that New York law applies (Dkt. No. 29: Pls. Reply Br. at 3: a "federal court sitting in diversity must follow the law as enunciated by . . . the New York Court of Appeals"), and both parties' briefs cite almost entirely to New York law (see generally Dkt. No. 20: Pls. Br. at 2-12; Dkt. No. 27: Century Br. at 6-10, 16-18; Pls. Reply Br. at 1-9; Dkt. No. 32: Century Reply Br. at 2-6).  "The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'"  Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (quoting Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)); accord, e.g., Bennett v. Sterling Planet, Inc., 546 F. App'x 30, 33 (2d Cir. 2013) ("In a diversity case, where the parties have agreed to the application of the forum law—as evidenced by reliance on that law in the parties' briefing, as in this case—their agreement ends the choice-of-law inquiry."); Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."); William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., 07 Civ. 10639, 2009 WL 427280 at *6 (S.D.N.Y. Feb. 23, 2009) (Peck, M.J.).

terms of the contract are ambiguous."  Alexander & Alexander Servs., Inc. v. These Certain

Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998) (citations omitted); accord, e.g., W.W.W.

Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990) ("Whether or not

a writing is ambiguous is a question of law to be resolved by the courts."); Sutton v. E. River Sav.

Bank, 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 462 (1982) ("[T]he threshold decision on whether a

writing is ambiguous is the exclusive province of the court.").[9]

Under New York law, the construction of an unambiguous contract is a matter of law,

appropriate for summary judgment resolution.  See, e.g., Trs. of 1199/SEIU Greater N.Y. Benefit

Fund v. Kingsbridge Heights Rehab. Care Ctr., 405 F. App'x 520, 523 (2d Cir. 2010); Adirondack

Transit Lines, Inc. v. United Transp. Union, Local 1582, 305 F.3d 82, 85 (2d Cir. 2002) ("'The

proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on

such an issue may properly be resolved by summary judgment.'" (quoting Omni Quartz, Ltd. v. CVS

Corp., 287 F.3d 61, 64 (2d Cir. 2002))); Bouzo v. Citibank, N.A., 96 F.3d 51, 58 (2d Cir. 1996);

Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996).[10]

---

[9]    See, e.g., Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 53 (2d Cir.
2012); Bison Capital Corp. v. ATP Oil & Gas Corp., 473 F. App'x 40, 41-42 (2d Cir. 2012);
Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010); JA
Apparel Corp. v. Abboud, 568 F.3d 390, 396-97 (2d Cir. 2009); Am. Home Assurance Co.
v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir. 2006); Augienello v.
Coast-to-Coast Fin. Corp., 64 F. App'x 820, 821-22 (2d Cir. 2003); Bank of N.Y. Mellon
Trust Co. v. Solstice ABS CBO II, Ltd., 910 F. Supp. 2d 629, 641 (S.D.N.Y. 2012) (Peck,
M.J.) (& cases cited therein); Maniolos v. United States, 741 F. Supp. 2d 555, 566 (S.D.N.Y.
2010) (Peck, M.J.) (& cases cited therein), aff'd, 469 F. App'x 56 (2d Cir. 2012).

[10]   See also, e.g., Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d
1091, 1094 (2d Cir. 1993); Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428
(2d Cir. 1992); Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990);
Nicholas Labs. Ltd. v. Almay, Inc., 900 F.2d 19, 21 (2d Cir. 1990); Hunt Ltd. v. Lifschultz
Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989); Robinson v. Pierce, 11 Civ. 5516,
(continued...)

"It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1210 (2d Cir. 2002); accord, e.g., Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) ("Ambiguity is determined by looking within the four corners of the document, not to outside sources." (quotations omitted)); Rosenblatt v. Christie, Manson & Woods Ltd., 195 F. App'x 11, 12 (2d Cir. 2006) ("Where, as here, a contract is unambiguous, it is enforced according to its terms, and the court will generally not look 'outside the four corners of the document' to add to or vary it."); Maniolos v. United States, 741 F. Supp. 2d at 566 (& cases cited therein).[11]/

Specifically, in the context of an insurance policy,

---

[10]/     (...continued)
2012 WL 833221 at *5 (S.D.N.Y. Mar. 13, 2012) (Peck, M.J.) (& cases cited therein); Norfolk S. Ry. v. Flexi-Van Leasing, Inc., 99 Civ. 0055, 2000 WL 1855112 at *5 (S.D.N.Y. Dec. 18, 2000); ABC Radio Network, Inc. v. Lens Am., Inc., 97 Civ. 9467, 1999 WL 771360 at *3 (S.D.N.Y. Sept. 28, 1999); Air Support Int'l, Inc. v. Atlas Air, Inc., 54 F. Supp. 2d 158, 165 (E.D.N.Y. 1999); Berman v. Parco, 986 F. Supp. 195, 208-09 (S.D.N.Y. 1997); Chase Manhattan Bank, N.A. v. Keystone Distribs. Inc., 873 F. Supp. 808, 810-11 (S.D.N.Y. 1994); Royal Bank of Can. v. Mahrle, 818 F. Supp. 60, 62 (S.D.N.Y. 1993); Broadway Nat'l Bank v. Progressive Cas. Ins. Co., 775 F. Supp. 123, 126 (S.D.N.Y. 1991), aff'd, 963 F.2d 1522 (2d Cir. 1992).

[11]/     See, e.g., Bank of N.Y. Mellon Trust Co. v. Solstice ABS CBO II, Ltd., 910 F. Supp. 2d at 641-42 (& cases cited therein); S. N.J. Rail Grp., LLC v. Lumbermens Mut. Cas. Co., 06 Civ. 4946, 2007 WL 2296506 at *7 & n.9 (S.D.N.Y. Aug. 13, 2007) (Peck, M.J.) (& cases cited therein); R/S Assocs. v. N.Y. Job Dev. Auth., 98 N.Y.2d 29, 33, 744 N.Y.S.2d 358, 360 (2002) ("Unless the court finds ambiguity, the rules governing the interpretation of ambiguous contracts do not come into play.  Thus, when interpreting an unambiguous contract term [e]vidence outside the four corners of the document . . . is generally inadmissible to add to or vary the writing.  [E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." (citations & quotations omitted)); Weissman v. Sinorm Deli, Inc., 88 N.Y.2d 437, 447, 646 N.Y.S.2d 308, 313 (1996) ("[W]hen parties set down their agreement in a clear, complete document, evidence outside the four corners of the document as to what was actually intended is generally inadmissible.").

> "The New York approach to the interpretation of contracts of insurance is to give
> effect to the intent of the parties as expressed in the clear language of the contract.
> Unambiguous terms are to be given their plain and ordinary meaning, and ambiguous
> language should be construed in accordance with the reasonable expectations of the
> insured when he entered into the contract."

United States v. Am. Home Assurance Co., 94 Civ. 7621, 2003 WL 21436219 at *2-3 (S.D.N.Y.

June 19, 2003) (quoting McCarthy v. Am. Int'l Grp., 283 F.3d 121, 124 (2d Cir. 2002)) (quotations

omitted); see also, e.g., Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472

F.3d 33, 42 (2d Cir. 2006) (citing cases); Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.,

189 F.3d 208, 215 (2d Cir. 1999) ("[A]n insurance policy, like any contract, must be construed to

effectuate the intent of the parties as derived from the plain meaning of the policy's terms."); S. N.J.

Rail Grp., LLC v. Lumbermens Mut. Cas. Co., 2007 WL 2296506 at *8; Checkrite Ltd. v. Ill. Nat'l

Ins. Co., 95 F. Supp. 2d 180, 189 (S.D.N.Y. 2000).  Moreover, "'[w]here the terms of an insurance

policy are clear and unambiguous, they should be given their plain and ordinary meaning, and courts

should refrain from rewriting the agreement.   However, where the policy is ambiguous and

susceptible of two reasonable interpretations, extrinsic evidence may be admitted to resolve the

ambiguity.'"  United States v. Am. Home Assurance Co., 2003 WL 21436219 at *3 (quoting Matter

of Ideal Mut. Ins. Co., 231 A.D.2d 59, 63, 659 N.Y.S.2d 273, 275 (1st Dep't 1997)).[12/]

---

[12/]    See also, e.g., Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d
at 42 ("When the provisions [of an insurance contract] are unambiguous and understandable,
courts are to enforce them as written."); Liberty Surplus Ins. Corp. v. Segal Co., 142 F.
App'x 511, 513 (2d Cir. 2005) ("Unambiguous terms [in an insurance contract] are given
their plain and ordinary meaning, but provisions will be found ambiguous if they are
'reasonably susceptible to more than one reading.'   Whether an insurance policy is
ambiguous is an issue of law for the court, but where a policy is ambiguous, extrinsic
evidence may be introduced and credibility determinations involving that evidence will
generally present an issue for the trier of fact." (citations omitted)); Commercial Union Ins.
Co. v. Flagship Marine Servs., Inc., 190 F.3d 26, 32-33 (2d Cir. 1999) ("'The starting point
in interpreting an insurance policy is to determine whether the policy terms are ambiguous.
(continued...)

"Contract language is not ambiguous if it has 'a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion.'" Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d at 1277 (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355 (1978)).[13/] Conversely, a contract is ambiguous if it is reasonably susceptible to more than one meaning. E.g., Chimart Assocs. v. Paul, 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 346 (1986) (to determine if ambiguity exists in contract court must determine "whether the agreement on its face is reasonably susceptible of more than one interpretation"); Angelino v. Freedus, 69 A.D.3d 1203, 1206, 893 N.Y.S.2d 668, 671 (3d Dep't 2010) ("'A contract is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion.'"); see, e.g., Bison Capital Corp. v. ATP Oil & Gas Corp., 473 F. App'x at 42; Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 (2d Cir. 1987) ("An ambiguous word or phrase is one capable of more than one meaning when viewed objectively by a reasonably

---

[12/]    (...continued)
As a general rule, plain or unambiguous language will be given its ordinary meaning and effect and the need to resort to rules of construction arises only when an ambiguity exists.' 'As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading.'" (citations omitted)); Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co., 189 F.3d at 215 ("If the language of the insurance policy is unambiguous, we apply its terms.  Where its terms are reasonably susceptible to more than one interpretation, the policy must be regarded as ambiguous."); S. N.J. Rail Grp., LLC v. Lumbermens Mut. Cas. Co., 2007 WL 2296506 at *8 & n.10.

[13/]    Accord, e.g., Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 692 F.3d at 53; Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d at 467; JA Apparel Corp. v. Abboud, 568 F.3d at 396; Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 160 (2d Cir. 2003); RJE v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003); Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d at 1192; Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d at 1095; Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d at 428; Bank of N.Y. Mellon Trust Co. v. Solstice ABS CBO II, Ltd., 910 F. Supp. 2d at 642 (& cases cited therein); Maniolos v. United States, 741 F. Supp. 2d at 567 (& cases cited therein).

intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (quotations omitted)).[14]

Clear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations.  E.g., Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 460, 161 N.Y.S.2d 90, 93 (1957) ("Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact."); Slattery Skanska Inc. v. Am. Home Assurance Co., 67 A.D.3d 1, 14, 885 N.Y.S.2d 264, 274 (1st Dep't 2009) ("That one party to the agreement may attach a particular, subjective meaning to a term that differs from the term's plain meaning does not render the term ambiguous."); Moore v. Kopel, 237 A.D.2d 124, 125, 653 N.Y.S.2d 927, 929 (1st Dep't 1997) ("[A] contract is not rendered

---

[14]    See also, e.g., Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 692 F.3d at 53; Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d at 466; JA Apparel Corp. v. Abboud, 568 F.3d at 396-97; Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d at 42; United Air Lines, Inc. v. Ins. Co. of State of Pa., 439 F.3d 128, 134 (2d Cir. 2006) (A contract "is ambiguous when it is reasonably susceptible to more than one reading." (quotations omitted)); Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d at 428; Bank of N.Y. Mellon Trust Co. v. Solstice ABS CBO II, Ltd., 910 F. Supp. 2d at 642-43 (& cases cited therein); Maniolos v. United States, 741 F. Supp. 2d at 568 (& cases cited therein); Health-Chem Corp. v. Baker, 737 F. Supp. 770, 773 (S.D.N.Y.), aff'd, 915 F.2d 805 (2d Cir. 1990); Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A., 100 A.D.3d 100, 106, 951 N.Y.S.2d 19, 24 (1st Dep't 2012); China Privatization Fund (Del), L.P. v. Galaxy Entm't Grp. Ltd., 95 A.D.3d 769, 770, 945 N.Y.S.2d 659, 760 (1st Dep't 2012); Am. Express Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990) ("A contract should be construed so as to give full meaning and effect to all of its provisions."), appeal denied, 77 N.Y.2d 807, 569 N.Y.S.2d 611 (1991).

ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms.").[15]

        "[W]hen ambiguity exists and the resolution of the ambiguity hinges on such extrinsic matters as the credibility of witnesses or documents or upon choosing one among several reasonable inferences that may be drawn from such extrinsic evidence, a jury, and not a court, should decide what meaning is to be ascribed to the contract."  Chase Manhattan Bank, N.A. v. Keystone Distribs., Inc., 873 F. Supp. at 811.[16]  However, it is the Court's role to determine the value or existence of extrinsic evidence produced by the parties.  Uniroyal, Inc. v. Home Ins. Co., 707 F. Supp. 1368, 1375 (E.D.N.Y. 1988) (Weinstein, D.J.) ("The appraisal of the value or existence of extrinsic evidence is for the court as a matter of substantive law.").  Thus, even when a contract is ambiguous, if the parol evidence offered by the parties does not resolve that ambiguity, or after opportunity to do so the parties do not offer extrinsic evidence to resolve the ambiguity, the Court

---

[15]    See, e.g., Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d at 467; JA Apparel Corp. v. Abboud, 568 F.3d at 396; Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 598 (2d Cir. 2005) ("[T]he language of a contract is not made ambiguous simply because the parties urge different interpretations.  Nor does ambiguity exist where one party's view strain[s] the contract language beyond its reasonable and ordinary meaning." (quotations omitted)); Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d at 160 ("Unambiguous contract language is not rendered ambiguous by competing interpretations of it urged in litigation."); see also, e.g., Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d at 889 ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."); Bank of N.Y. Mellon Trust Co. v. Solstice ABS CBO II, Ltd., 910 F. Supp. 2d at 643 (& cases cited therein); Maniolos v. United States, 741 F. Supp. 2d at 569 (& cases cited therein).

[16]    See also, e.g., Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d at 428; Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir. 1990); Wards Co. v. Stamford Ridgeway Assocs., 761 F.2d 117, 120 (2d Cir. 1985); S. N.J. Rail Grp., LLC v. Lumbermens Mut. Cas. Co., 2007 WL 2296506 at *9; Norfolk S. Ry. v. Flexi-Van Leasing, Inc., 2000 WL 1855112 at *6; ABC Radio Network, Inc. v. Lens Am., Inc., 1999 WL 771360 at *3; Berman v. Parco, 986 F. Supp. at 210.

must construe the contract as a matter of law on a summary judgment motion.  E.g., State of N.Y. v. Home Indem. Co., 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969, 971 (1985) ("[I]f the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court."); Kenavan v. Empire Blue Cross & Blue Shield, 248 A.D.2d 42, 677 N.Y.S.2d 560, 563 (1st Dep't 1998) (where the "evidence introduced by the parties extrinsic to the [contract] was not dispositive of the [interpretation] issue . . . the proper interpretation is an issue of law for the court"); Primavera v. Rose & Kiernan, Inc., 248 A.D.2d 842, 843, 670 N.Y.S.2d 223, 224-25 (3d Dep't 1998) ("If, however, extrinsic evidence does not resolve the ambiguity, the interpretation of the ambiguous contract terms remains a question of law for the court."); Econo Truck Body & Equip., Inc. v. Guaranty Nat'l Ins. Co., 162 A.D.2d 913, 915, 557 N.Y.S.2d 991, 993 (3d Dep't 1990).[17/]

The Court turns to interpretation of the Century and Endurance insurance policies.

## III.   THE EMPLOYER'S LIABILITY EXCLUSION DOES NOT BAR CENTURY'S COVERAGE

### A.   Additional Legal Standards Applicable to Insurance Policy Exclusions

Exclusions contained in insurance policies are to be construed narrowly, and ambiguities in exclusionary clauses are to be strongly construed in favor of the insured.  See, e.g., Shelby Realty LLC v. Nat'l Sur. Corp., 06 Civ. 3260, 2007 WL 1180651 at *3 (S.D.N.Y. Apr. 11,

---

[17/]   See also, e.g., Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d at 86 (where no extrinsic evidence exists, court may grant summary judgment); Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co., 93 F.3d 1064, 1073 (2d Cir. 1996) ("Summary judgment may be proper in a contract action if . . . the contract is ambiguous but there is no relevant extrinsic evidence of the parties' actual intent."); McCostis v. Home Ins. Co., 31 F.3d 110, 113 (2d Cir. 1994); S. N.J. Rail Grp., LLC v. Lumbermens Mut. Cas. Co., 2007 WL 2296506 at *9; Gen. Star Indem. Co. v. Custom Editions Upholstery Corp., 940 F. Supp. 645, 655 (S.D.N.Y. 1996); Uniroyal, Inc. v. Home Ins. Co., 707 F. Supp. at 1374-75 (leading case).

2007) ("'Exclusionary clauses are strictly construed to give the interpretation most beneficial to the insured', and a construction favorable to the insurer will be sustained only if it is the 'only construction which may fairly be placed on the [words used].'" (citations omitted)); Essex Ins. Co. v. Vickers, 103 A.D.3d 684, 687, 959 N.Y.S.2d 525, 528 (2d Dep't 2013) ("'An exclusion from coverage "must be specific and clear in order to be enforced", and an ambiguity in an exclusionary clause must be construed most strongly against the insurer.'"); Richner Dev., LLC v. Burlington Ins. Co., 81 A.D.3d 705, 706, 916 N.Y.S.2d 211, 212 (2d Dep't 2011) ("'An exclusion from coverage "must be specific and clear in order to be enforced," and an ambiguity in an exclusionary clause must be construed most strongly against the insurer.'" (citation omitted)); Nautilus Ins. Co. v. Matthew David Events, Ltd., 69 A.D.3d 457, 459, 893 N.Y.S.2d 529, 531 (1st Dep't 2010) (same).[18/]

"When an insurer seeks relief from coverage under an exclusion provision of an insurance contract, the insurer bears the burden of proving that the exclusion applies." Shelby Realty LLC v. Nat'l Sur. Corp., 2007 WL 1180651 at *3; see also, e.g., U.S. Underwriters Ins. Co. v. 101-19 37th Ave. LLC, No. 12-CV-3062, 2014 WL 1277888 at *6 (E.D.N.Y. Mar. 27, 2014) ("To negate coverage by virtue of an exclusion contained within a policy, 'an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable

---

[18/]   See also 2 Couch on Insurance § 22:31 (3d ed. 2014) ("While provisos, exceptions, or exemptions, and words of limitation in the nature of an exception, may be freely contracted for by the insurer, in accord with the general standard of giving effect to the purpose of the contract, the rule is that, such terms are strictly construed against the insurer where they are of uncertain import or reasonably susceptible of a double construction, or negate coverage provided elsewhere in the policy.  A risk that comes naturally within the terms of a policy is not deemed to be excluded unless the intent of the parties to exclude it appears clearly so that it cannot be misconstrued." (fns. omitted)); 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 1.05, at 57 (16th ed. 2013) ("Contra-insurer rules of construction apply with particular force when there is an ambiguity in an exclusionary clause.").

interpretation, and applies in the particular case.' . . . Under New York law, 'an insurer bears the burden of proving that an exclusion applies.'")[19]

### B.  Purpose and Judicial Interpretations of Employer's Liability Exclusions and Separation of Insured Provisions

The employer's exclusion is used in general liability policies to avoid duplication of an employer's workers' compensation insurance by excluding coverage for claims by an injured employee against his own employer.  E.g., Shelby Realty LLC v. Nat'l Sur. Corp., 06 Civ. 3260, 2007 WL 1180651 at *4 (S.D.N.Y. Apr. 11, 2007) ("The Employee Exclusion recognizes that general liability coverage is unnecessary for an employer whose employee is injured in the course of his employment since the workman's compensation system (and the required workman's compensation insurance coverage) covers such an injury.  However, a non-employer . . . needs general liability coverage if sued by someone else's employee. . . . [T]he Employee Exclusion precludes over-coverage (where an employer has both workman's compensation insurance and commercial liability insurance for an employee's injury) by excluding claims stemming from an employee's bodily injury sustained 'in the course of his employment' . . . ." (citing Employers' Liab. Assurance Corp. v. Travelers Ins. Co., 411 F.2d 862, 865 (2d Cir.1969))); accord, e.g., Ostrowski v. Am. Safety Indem. Co., No. 07-CV-3977, 2010 WL 3924679 at *6 (E.D.N.Y. Sept. 30, 2010).[20]

---

[19]    On this basis, the Court rejects Century's argument (Dkt. No. 27: Century Br. at 3-5) that plaintiffs' summary judgment motion should be denied because plaintiffs failed to allege in the complaint that the employer's liability exclusion is inapplicable.  (See also Dkt. No. 29: Pls. Reply Br. at 8: "It is Century's obligation – not the Plaintiffs' obligation – to claim the applicability of an exclusion under the Century policy.")

[20]    See also, e.g., U.S. Fid. & Guar. Co. v. Globe Indem. Co., 60 Ill. 2d 295, 298-99, 327 N.E.2d 321, 323 (1975) ("[T]he clear intent of the employee exclusion is to preclude an employee from suing his employer for injuries suffered as a result of the employer's negligence.  The purpose behind this exclusion is that the employee is covered by workmen's compensation
(continued...)

Given that liability policies often extend coverage beyond the named insured, separation of insureds provisions "were adopted by the insurance industry to define the extent of coverage afforded by a policy issued to more than one insured." Sacharko v. Ctr. Equities Ltd. P'ship, 2 Conn. App. 439, 443, 479 A.2d 1219, 1222 (Conn. App. Ct. 1984); accord, e.g., Greaves v. Pub. Serv. Mut. Ins. Co., 5 N.Y.2d 120, 124, 181 N.Y.S.2d 489, 491 (1959) ("'proper view'" of policy containing separation of insureds provision "'is that by it the defendant [insurer] has undertaken separate and distinct obligations to the various assured, named and additional'" (quoting Morgan v. Greater N.Y. Taxpayers Mut. Ins. Ass'n, 305 N.Y. 243, 249, 112 N.E.2d 273, 275 (1953))); see also, e.g., U.S. Fid. & Guar. Co. v. Globe Indem. Co., 60 Ill. 2d at 299, 327 N.E.2d at 323 ("The language [of separation of insureds provisions] shows that the insurer recognizes an obligation to additional insureds distinct from its obligation to the named insured.").

Separation of insured provisions require that each insured "be treated as if separately covered by the policy and indeed as if he (additional insured) had a separate policy of his own."

---

[20]/     (...continued)
and can recover with or without a showing of negligence."); 4 Bruner & O'Connor on Construction Law § 11:148 (2014) ("Workers' compensation insurance is intended to cover an employer's liability for injuries incurred by its employees. The CGL policy contains an employee exclusion to avoid overlapping coverage with workers' compensation insurance."); 9A Couch on Insurance §§ 129:10-129:11 (3d ed. 2014) ("A commercial general liability policy is not designed to provide coverage for an employer's liability for injuries to its employees. Instead, the compliance of an employer with a respective jurisdiction's workers' compensation statute constitutes the full extent of an employer's liability for any injuries sustained by its employees, arising out of and in the course of their employment. The standard commercial general liability policy therefore expressly excludes coverage for any obligation of the insured under a workers' compensation law or any similar law. . . . The second standard employment related exclusion exempts coverage for bodily injury to an employee arising out of and in the course of employment by the insured or during the performance of duties relating to the conduct of the insured's business." (fn. omitted)); Scott C. Turner, Insurance Coverage of Construction Disputes § 13:1 (2d ed. 2014) ("The purpose of the employers liability exclusion is to eliminate redundant coverage for injury and damage which is covered by workers' compensation and/or employers' liability policies.").

Greaves v. Pub. Serv. Mut. Ins. Co., 5 N.Y.2d at 124, 181 N.Y.S.2d at 491; see also, e.g., U.S. Fid. & Guar. Co. v. Globe Indem. Co., 60 Ill. 2d at 299, 327 N.E.2d at 323 ("A reasonable interpretation of the language of the severability clause, that 'the insurance afforded applies separately to each insured,' leads to the obvious conclusion that each insured is to be treated as if each were separately insured.").

"[T]he Separation of Insureds Clause precludes under-coverage (where a party is left without either workman's compensation insurance or commercial liability insurance) by limiting the Employee Exclusion to the actual employer of the injured party." Shelby Realty LLC v. Nat'l Sur. Corp., 2007 WL 1180651 at *4; see, e.g., 9A Couch on Insurance § 129:12 ("However, a 'severability of interests' clause contained within the terms of the policy may render the employee exclusion inapplicable where an employee of one insured is injured by the other insured.").

"The interplay between provisions of liability policies extending coverage beyond the named insured and excluding employees has given rise to much controversy," and the challenge of reconciling a policy's exclusionary language with a separation of insureds provision has generated conflicting judicial interpretations. Employers' Liab. Assurance Corp. v. Travelers Ins. Co., 411 F.2d at 865; see, e.g., Nautilus Ins. Co. v. Barfield Realty Corp., 11 Civ. 7425, 2012 WL 4889280 at *10 (S.D.N.Y. Oct. 16, 2012) ("Importantly, there is some disagreement in the case law concerning the relationship between exclusionary language, such as the clauses present in [this] Endorsement, and the Separation of Insureds language." (comparing cases)).[21]

---

[21]    See also Mark Pomerantz, Recognizing the Unique Status of Additional Named Insureds, 53 Fordham L. Rev. 117, 126 (1984) ("Because the courts have failed to appreciate the status of an additional named insured as a unique type of third party beneficiary, they traditionally have treated additional named insureds as either named insureds or additional insureds. This treatment has led to results contrary to the intents of the parties." (fns. omitted)).

As the parties recognize, however, New York courts have reached a consensus regarding the divergent effects of a separation of insureds provision on an employer's liability exclusion that bars coverage for employees of "<u>any</u> insured" and one that bars coverage for emloyees of "<u>the</u> insured."  (Dkt. No. 20: Pls. Br. at 11-12; Dkt. No. 27: Century Br. at 6: "Plaintiffs are correct that New York courts have held that 'where exclusionary endorsements refer to '<u>the</u> insured,' rather than '<u>any</u> insured,' the separation of insureds language does indeed control, as the clauses may be read together in harmony . . .' and 'where the language of the exclusion refers to '<u>any</u> insured' it should be read to supersede the separation of insureds language.'")  In short, "where exclusionary endorsements refer to '<u>the</u> insured,' rather than '<u>any</u> insured,' the separation of insureds language does indeed control, as the clauses may be read together in harmony."  <u>Nautilus Ins. Co.</u> v. <u>Barfield Realty Corp.</u>, 2012 WL 4889280 at *10.  Accordingly, exclusions for employees of "<u>the</u> insured" only apply where the injured party is an employee of the insured employer whose coverage is being considered.  <u>See</u>, <u>e.g.</u>, <u>Employers' Liab. Assurance Corp.</u> v. <u>Travelers Ins. Co.</u>, 411 F.2d at 866 (explaining that "the named insured would be covered for injuries to employees of an additional insured, just as the additional insured would be covered for injuries to employees of the named insured, but neither would be covered for injuries to his own employees").  Conversely, where "the language of the exclusion refers to '<u>any</u> insured' it should be read to supersede the separation of insureds language in order both to effectuate its plain meaning, and to avoid rendering the clause a nullity."  <u>Nautilus Ins. Co.</u> v. <u>Barfield Realty Corp.</u>, 2012 WL 4889280 at *10.  Thus, exclusions for employees of "<u>any</u> insured" will apply to bar coverage of any employee against his own employer as well as any other employer insured under the policy.  <u>Id.</u>

**C.** **While Century's Policy Has Some Ambiguity, Century's Interpretation is Not Reasonable, and Extrinsic Evidence Confirms that Plaintiffs' Interpretation is Reasonable and Consistent with the Parties' Intent**

Century's employer's exclusion utilizes neither "<u>any</u> insured" nor "<u>the</u> insured" as the operative language, but rather refers to "the named insured." (<u>See</u> page 5 above.) The interpretation of Century's exclusion for employees of "the named insured," however, is informed by the same principles set forth above.

At the outset, the Court rejects Century's argument that, in every policy and in all contexts, "the terms 'named insured' and 'additional insured'" always identify "two distinct insureds" such that "[t]he phrase 'named insured' whether capitalized or put in quotation marks has only one meaning – the insured listed on the declarations page." (<u>See</u> Dkt. No. 27: Century Br. at 9-12.) To the contrary, an insured may be both "named" and "additional" under the terms of a given policy.[22]

---

[22] See, <u>e.g.</u>, <u>Marathon Pipeline Co.</u> v. <u>Md. Cas. Co.</u>, 5 F. Supp. 2d 1252, 1256 (D. Wyo. 1998) ("Under a plain reading of the policies, Marathon and Platte are Named Insureds as well as additional insureds . . . ."), <u>aff'd in relevant part</u>, 243 F.3d 1232 (10th Cir. 2001); <u>Truck Ins. Exch.</u> v. <u>BRE Props., Inc.</u>, 119 Wash. App. 582, 585-86, 588-89, 592, 81 P.3d 929, 930-33 (Wash. App. Ct. 2003) ("BRE was the general contractor on a construction project to build an apartment complex. It contracted with West Star to serve as its framing subcontractor. The agreement between BRE and West Star required West Star to obtain liability insurance coverage for its work on the project. West Star procured a CGL policy from Truck Insurance Exchange. <u>This coverage listed BRE as an additional insured under the policy.</u> . . . An employee of West Star was injured while working on the construction site. He sued BRE, claiming that it was negligent in equipping and maintaining the work area. . . . Truck argues that the policy precludes coverage for injuries to employees who suffer injury during the course of employment. BRE responds that because the injured worker was not its employee, the exclusion does not apply. . . . The policy contains a severability clause that applies the policy separately to each named insured as if each insured were the only insured: . . . <u>Under the endorsements provided by Truck, BRE is a named insured.</u> . . . Because the injured worker was not an employee of BRE, BRE is entitled to policy coverage for the claim." (emphasis added)); Mark Pomerantz, <u>Recognizing the Unique Status of Additional Named Insureds</u>, 53 Fordham L. Rev. 117, 119-20 (1984) ("The courts sometimes recognize the existence of a third type of insured known as an additional named insured. This is an entity specifically designated as an insured subsequent to the issuance of the original policy.
(continued...)

The Court therefore must look to the terms of Century's policy to determine whether the phrase used in Century's employer's liability exclusion is susceptible of two reasonable interpretations.  See, e.g., Mark Pomerantz, Recognizing the Unique Status of Additional Named Insureds, 53 Fordham L. Rev. at 128 ("It is fundamental that a third party beneficiary's rights stem from the contract itself. Therefore, the insurance contract, which includes the endorsement adding the additional named insured to the policy, is the first evidence that must be examined." (fns. omitted)); see also cases cited on pages 18-20 above.

Century's policy defines neither "named insured" nor "additional insured" in the preamble, Section II ("Who is an Insured") or Section V ("Definitions").  (See pages 6-8 above.) The operative endorsement amends Section II to include Hayden, and Section II does not define classes of insureds in terms of status as "named" or "additional" insureds, but rather it describes which persons related to the insured are included under the policy.  (See pages 6-7 above; Ex. L: Century Policy § II, at 27-28.)  Moreover, Century "could have included a plain statement in the preamble, in Section II, or in the endorsement specifying that additional insureds do not qualify as named insureds," and its failure to do so renders the policy somewhat "ambiguous as to whether this language differentiates an additional insured such as [Hayden] from a named insured" in the context of the employer's liability exclusion.  Marathon Ashland Pipe Line LLC v. Md. Cas. Co., 243 F.3d

---

22/    (...continued)
A party typically becomes an additional named insured pursuant to an agreement obligating the named insured to add the additional named insured to the named insured's pre-existing policy.  For example, a property owner seeking to make improvements may hire a contractor.  As part of the arrangement, the owner may bargain for the contractor's obligation to procure liability coverage in favor of the owner.  This is referred to here as an 'agreement to procure.'  The contractor's insurer, usually for little or no extra premium, will issue the contractor an endorsement that adds the owner as an additional named insured to the policy in which the contractor is the named insured.  The previously executed policy and the endorsement insuring against new risks form the new insurance policy." (fns. omitted)).

1232, 1241-42 (10th Cir. 2001); see also, e.g., Marathon Pipeline Co. v. Md. Cas. Co., 5 F. Supp.

2d at 1256 (additional ensured added by endorsement was considered both a named insured and

additional insured where "the policy does not define 'Named Insured,' in the policy either in Section

V under the definitions or elsewhere").[23/]

        Moreover, the Century policy contemplates the existence of "named insureds" other

than Pinnacle.  The policy repeatedly makes reference to "the first Named Insured."  (Ex. L: Century

Policy § IV.5.b (Century will "send notice to the first Named Insured" and "return the excess to the

first Named Insured"); § IV.5.c ("The first Named Insured must keep records"); § IV.7 (excluding

duties assigned "to the first Named Insured"); § IV.9 (Century will "deliver to the first Named

Insured").)  If there were only one named insured, as Century argues, there would be no need to

distinguish it as "the first Named Insured."  See, e.g., Marathon Pipeline Co. v. Md. Cas. Co., 5 F.

Supp. 2d at 1256 ("[T]his provision alludes to the existence of a 'first Named Insured' so as to

distinguish between other Named Insured, which include those who have also been designated as

'additional insured.'")  Likewise, the "named insured" designation is not limited to the party named

in Century's Declarations, since the policy expressly recognizes "other persons[s] or organization[s]

qualifying as a Named Insured under this policy," as distinguished from "the Named Insured shown

in the Declarations."  (Century Policy at 1: Preamble; see Century Policy § II.3 (describing

organizations not listed in the Declarations that expressly "will qualify as a Named Insured").)  See

also, e.g., Marathon Pipeline Co. v. Md. Cas. Co., 5 F. Supp. 2d at 1256 ("In addition, 'Named

Insured' is not limited to those parties singled out in the declarations page, but may also be '. . . any

---

[23/]    Cf., e.g., Kennedy v. Valley Forge Ins. Co., 203 A.D.2d 930, 931, 612 N.Y.S.2d 712, 713
(4th Dep't) ("The failure of the policy to define the term 'named driver' or to exclude it from
coverage gives rise to an ambiguity that must be construed in favor of the insured."), aff'd,
84 N.Y.2d 963, 621 N.Y.S.2d 512 (1994).

other person or organization qualifying as a named insured under this policy.' . . . Under a plain reading of the policies, Marathon and Platte are Named Insureds as well as additional insureds . . . .").

        Century's exclusion of coverage for employees of "the named insured" becomes clear when considered in light of the separation of insureds provision, which requires the policy to be applied "[s]eparately to each insured against whom claim is made" as "if each Named Insured were the only Named Insured." (Century Policy § IV.7.)[24/]  If Century's policy—including its employer's liability exclusion—is to be applied to Hayden as if Hayden is the only insured (as if Pinnacle does not exist), then "the named insured" employer referenced in the exclusion could not be Pinnacle, since "[a]n insured who does not exist cannot employ anyone."  Mut. Benefit Ins. Co. v. Politopoulos, 75 A.3d 528, 536-37 (Pa. Super. Ct. 2013) ("The plain, unambiguous language of the 'Separation of Insureds' clause directs us to evaluate whether Owners are insured under the Umbrella Policy as though they are the only named insured, an analytic conceit that is both clearer and stronger than a severability clause that simply identifies the insureds as 'several' rather than 'joint.' In no uncertain terms, the policy language directs us to evaluate coverage as though Employer does not exist.  Informed by this conclusion, we now must turn to the Employers' Exclusion. . . . [W]e are

---

[24/]    See, e.g., Marathon Pipeline Co. v. Md. Cas. Co., 5 F. Supp. 2d at 1256 (whether an additional insured also qualifies as a named insured "must be considered in light of the fact that the policy contains a 'Separation of Insureds' clause in Section IV"); Sacharko v. Ctr. Equities Ltd. P'ship, 2 Conn. App. 439, 444-45, 479 A.2d 1219, 1222 (Conn. App. Ct. 1984) ("'If the insurer wishes to further exclude its liability, it could clearly so state in its contract and its failure to do so should be strictly construed.  Especially is this true when the policy contains a severability clause, for there it can be implied that the insurer is actually recognizing a separate obligation to others, distinct and apart from the obligation it owes to the named insured.'"); 9A Couch on Insurance § 129:12 (3d ed. 2014) (separation of insureds provision "contained within the terms of the policy may render the employee exclusion inapplicable where an employee of one insured is injured by the other insured").

directed by the Umbrella Policy not to consider Employer, or by extension Employer's relationship to Denovitz, when determining whether the policy provides coverage for Owners. . . . An insured who does not exist cannot employ anyone.  Thus, if the person injured is not employed by the lone insured as to whom coverage is to be tested, the Employers' Exclusion simply does not come into play."); see, e.g., Arcelormittal Plate, LLC v. Joule Technical Servs., Inc., 558 F. App'x 205, 211 (3d Cir. 2014) ("[B]ecause the severability clause at issue 'directs [the court] to evaluate coverage as though the [other insured] does not exist,' the employee exclusion does not bar coverage for a lawsuit against one insured filed by a different insured's employee." (quoting Mut. Benefit Ins. Co. v. Politopoulos, 75 A.3d at 536-37)).  In other words, the Century policy's employer exclusion would read as follows:

> "Bodily injury" to:
>
> (1)    An "employee" of [Hayden] arising out of and in the course of:
>
> (a)    Employment by Hayden.

(See page 5 above.)  Since Sleszynski was not an employee of Hayden, the exclusion does not apply.

This reading of the policy also is supported by the general purposes of employer's liability exclusions and separation of insureds provisions in commercial general liability policies, namely, to avoid duplicate coverage when an employee's claim against his own employer is covered by workers' compensation insurance and to clarify the insurer's separate obligation to each distinct insured (see page 24 above).[25]  In the absence of evidence suggesting that either the employer's

---

[25]    While these general purposes may be extrinsic, it is of no consequence that they are discussed here, since the Court finds either that the policy unambiguously comports with plaintiffs' interpretation, or in the alternative that Century's interpretation is unreasonable. (See pages 38-40 below.)  Thus, the purposes underlying the relevant policy provisions do not form the basis for the Court's rejection of Century's argument.

exclusion or separation of insureds provision were employed by Century to serve some other purpose consistent with Century's interpretation, plaintiffs' interpretation is the only reasonable construction in light of the typical intent of these provisions as applied in the industry.  See, e.g., Employers' Liab. Assurance Corp. v. Travelers Ins. Co., 411 F.2d 862, 865 (2d Cir. 1969) (insurer "has shown no purpose that would be served by" its interpretation, and a "construction of the exclusion clause" that "excludes only employees of the insured seeking recovery under the policy" is "favored by the severability clause" and "makes excellent sense, since such risks would be expected to be covered by workmen's compensation insurance"); Ostrowski v. Am. Safety Indem. Co., No. 07-CV-3977, 2010 WL 3924679 at *6 (E.D.N.Y. Sept. 30, 2010); Shelby Realty LLC v. Nat'l Sur. Corp., 06 Civ. 3260, 2007 WL 1180651 at *4 (S.D.N.Y. Apr. 11, 2007) ("the Employee Exclusion, read in conjunction with the Separation of Insureds Clause," requires a reading of the exclusion that is limited "to individual insureds, as though each is the only insured under the policy," such that it "does not apply to Shelby unless one of Shelby's employees is injured," and since the injured employee "worked for City Club and not for Shelby, his employment is not relevant to Shelby's coverage").[26/]

---

[26/]     See also, e.g., Archer Daniels Midland Co. v. Burlington Ins. Co. Grp., 785 F. Supp. 2d 722, 730 (N.D. Ill. 2011) ("the purpose of the employee exclusion—namely, to prevent an employee who is covered by a worker's compensation program from recovering in a private suit against his employer—supports the rule" that employee exclusion "'does not exclude protection for an additional insured against an injury suffered by an employee of another insured'"); Atchison, Topeka & Santa Fe Ry. Co. v. St. Paul Surplus Lines Ins. Co., 328 Ill. App. 3d 711, 717, 767 N.E.2d 827, 831 (Ill. App. Ct. 2002) ("[T]he exclusionary clause applies only to the situation where an insured is sued by its own employee.  The analysis of the court . . . considers the purpose of both the severability clause, to afford coverage separately to each insured, and the employer liability exclusion, to preclude an employee from suing his employer for injuries suffered as a result of the employer's negligence.  In considering the intent of these provisions, we find any distinction between the use of the term 'the insured' and 'a protected person' to be insignificant." (citation omitted)); Sacharko

(continued...)

In any event, even assuming _arguendo_ that the employer's exclusion were ambiguous, extrinsic evidence of the parties' intentions when Hayden was added to the Century policy that contained a separation of insureds provision and an employer's liability exclusion for employees of "the named insured" supports the conclusion that the exclusion does not apply.  (See cases cited on page 18 above.)   In this context, courts should consider extrinsic evidence of "the overall circumstances surrounding, and purpose behind, the entire arrangement," including "the language of, and the circumstances surrounding, the agreement to procure" between Hayden and Pinnacle. Mark Pomerantz, _Recognizing the Unique Status of Additional Named Insureds_, 53 Fordham L. Rev. at 129.[27]

---

[26]  (...continued)
v. _Ctr. Equities Ltd. P'ship_, 2 Conn. App. at 444, 479 A.2d at 1222 ("Where a policy contains a severability of interests clause, it is a recognition by the insurer that . . . the exclusion under the policy as to employees of the insured is confined to the employee of the insured who seeks protection under the policy." (citing _Employers' Liab. Assurance Corp._ v. _Travelers Ins. Co._, 411 F.2d at 865-66)); 2 _Couch on Insurance_ § 22:46 ("The rule is that a contract of insurance must be construed in its entirety with reference to the subject matter and the nature of the risk involved.  The policy should be construed, if possible, so as to give its terms and conditions a meaning reasonably applicable to the kind of insurance upon the particular species of property or risk insured, having in view the purposes for which it is ordinarily used and the manner in which it is usually kept . . . ." (fns. omitted)); Scott C. Turner, _Insurance Coverage of Construction Disputes_ §§ 13:1, 13:7 (2d ed. 2014) ("Note that the operation of the [employer's liability] exclusion is not confined to named insureds only; it also applies to the employee of any insured under the policy.  However, it does not apply to insureds not acting as the [injured] plaintiff's employer. . . .  By its own terms, the exclusion only applies to injuries to employees of _the insured_.  If the employee of the named insured sues a third party for its negligence and that third party is an additional insured under the policy, the exclusion should not apply, because the plaintiff is not the additional insured's employee." (fn. omitted & collecting cases)).

[27]  _See also_, _e.g._, 2 _Couch on Insurance_ § 22:8 ("The intent and understanding of the parties to an insurance contract is far more important than the strict and literal sense of the words used in the contract; thus, it is equally important to consider the subject matter of the insurance and the subject or object which the parties had in view at that time.  Additionally, it is often considered proper to consider the business of the parties, the circumstances surrounding the
(continued...)

1.      **Plaintiffs' Construction is Supported by the Language of Pinnacle's Agreement to Procure Comprehensive Liability Insurance on Hayden's Behalf**

Hayden and Pinnacle entered into a Master Subcontract Agreement (or Independent Contractor Agreement) that required Pinnacle to procure broad and comprehensive general liability coverage for Hayden by adding Hayden as an additional insured.  (See pages 3-4 above.)  Such procurement contracts are typical in the construction industry, and provide evidence of what Hayden and Pinnacle intended Century's policy to cover.[28]   The language of their agreement to procure

_____

[27]     (...continued)
        making of the contract, the situation of the property, and all other conditions which have a legitimate bearing on the parties' intention."); 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 1.03, at 28-29 (16th ed. 2013) (properly considered extrinsic evidence includes "'the "circumstances surrounding the making of the agreement . . . including the object, nature and subject-matter of the writing"'").

[28]     See Mark Pomerantz, Recognizing the Unique Status of Additional Named Insureds, 53 Fordham L. Rev. 117, 119-20 (1984) ("A party typically becomes an additional named insured pursuant to an agreement obligating the named insured to add the additional named insured to the named insured's pre-existing policy.  For example, a property owner seeking to make improvements may hire a contractor.  As part of the arrangement, the owner may bargain for the contractor's obligation to procure liability coverage in favor of the owner.  This is referred to here as an 'agreement to procure.'" (fn. omitted)); see also, e.g., William Floyd Sch. Dist. v. Maxner, 68 A.D.3d 982, 985-86, 892 N.Y.S.2d 115, 118 (2d Dep't 2009) ("The subcontract between Aurora and Premium required Premium to name the school district plaintiffs and Aurora as additional insureds under the Royal policy. . . . To determine whether the school district plaintiffs and Aurora are additional insureds for claims arising out of the underlying accident, the court must look to Premium's subcontract with Aurora."); Carlisle SoHo E. Trust v. Lexington Ins. Co., 49 A.D.3d 272, 272, 852 N.Y.S.2d 118, 119 (1st Dep't 2008) (considering "insurance requirements of the subcontract"); 3 Couch on Insurance § 40:30 (3d ed. 2014) ("A blanket additional insured endorsement generally provides coverage for any person or organization to whom or to which the named insured is obligated to name as an additional insured by virtue of a written contract or agreement.  For example, in the construction industry, subcontract agreements commonly contain specific provisions requiring the subcontractor to name the general contractor as an additional insured on the subcontractor's commercial general liability policy.  Thus, the general contractor would constitute an additional insured pursuant to the blanket endorsement under these circumstances.").

insurance coverage is evidence that Hayden and Pinnacle intended Century's policy to provide the type of coverage customarily afforded by insurers under these circumstances subject to the usual exclusions (i.e., an employer's liability exclusion that bars coverage where worker's compensation insurance applies), and nothing in the procurement agreement suggests that the parties intended to carve out a specific exclusion to bar coverage for claims by Pinnacle employees against Hayden. See, e.g., Employers' Liab. Assurance Corp. v. Travelers Ins. Co., 411 F.2d 862, 865 (2d Cir. 1969) (rejecting insurer's interpretation where the "clause seems designed to cover liability for that activity rather comprehensively" and the insurer "has shown no purpose that would be served by a construction that would cover [the additional insured's] liability in negligence if the truss had hit a passerby but would not apply if it hit [the named insured's] employee"); Mark Pomerantz, Recognizing the Unique Status of Additional Named Insureds, 53 Fordham L. Rev. at 129-30 ("The intent of the insureds is reflected by the language of, and the circumstances surrounding, the agreement to procure.  Despite the fact that the additional named insured is not a party to the insurance contract, his intent is relevant to the construction of that contract because the intent of the named insured in requesting the added coverage is directly dependent on the bargain that the additional named insured made with the named insured. . . . [T]he overall circumstances surrounding, and purpose behind, the entire arrangement are also relevant to determining the intents of the parties.  For example, one court has held that the custom and practice in the insurance industry of insuring additional named insureds only for vicarious liability is probative of the intents of the parties." (fns. omitted)).[29/]

---

[29/]   See also, e.g., 2 Couch on Insurance § 21:2 ("The type of insurance may affect construction of a given policy by virtue of the general rule that policy language should be liberally construed in favor of the insured in order to effect the purpose behind the insurance and the
(continued...)

In addition to the contractual requirement that Pinnacle obtain broad commercial liability insurance naming Hayden as an additional insured (see pages 3-4 above), the Hayden-Pinnacle contract also contained a broad "hold harmless" provision. (See page 4 above.)  The "hold harmless" provision required Pinnacle to "indemnify and hold harmless" Hayden, for all claims, "includ[ing] injury or death of any employee of the Contractor [Hayden] or Subcontractor [Pinnacle] and shall not be limited in any way by . . . benefits payable under any applicable Workers Compensation . . . act." (See page 4 above.)  Thus, Pinnacle is required to hold Hayden harmless for a claim of injury by a Pinnacle employee such as Sleszynski.  Both Pinnacle and Hayden clearly would want that "hold harmless" to be supported by (i.e., covered by) the required Pinancle-procured insurance policy from Century.  That intent further supports the plaintiffs' interpretation of the Century policy.  See, e.g., Lexington Ins. Co. v. ACE Am. Ins. Co., No. 12-0531, 2014 WL 3406512 at *18 (S.D. Tex. July 7, 2014) (considering "language of defense or hold harmless" in determining parties' intent regarding insurance carrier's duties); Deviney Constr. Co. v. Ace Util. Boring & Trenching, LLC, Nos. 11CV468, 13CV60, 2014 WL 2932169 at *5 (S.D. Miss. June 30, 2014) (considering independent contractor agreement's insurance procurement requirement and hold harmless provision in finding that "the parties clearly intended to provide [the contractor] with the maximum protection allowed by law"); Charter Oak Fire Ins. Co. v. Nat'l Wholesale Liquidators of Lodi, Inc., 99 Civ. 5756, 2002 WL 519738 at *8-9 (S.D.N.Y. Apr. 5, 2002) ("These [hold harmless]

---

29/   (...continued)
hazards which the policy was designed to protect." (emphasis added)); id. § 22:9 ("The contract is to be interpreted according to the intent of the parties . . . taking into account the situation of the parties, the nature of the subject matter, and the purposes which they sought to accomplish.  The determinative question is the intent of the parties, that is, what coverage the plaintiff expected to receive and what the defendant [insurer] was to provide . . . ." (fn. omitted & emphasis added)).

provisions express a clear intent to provide [defendant] with protection beyond a typical indemnity clause."); 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 5.04[a], at 412 (16th ed. 2013) (insurance policy construction "may also involve interpretation of service or other business contracts between the policyholder and other parties in the underlying litigation," and courts may consider "the allocation of liabilities in" the underlying business contract, including whether that "contract explicitly provided that [one party] was responsible for" certain liabilities).

> **2.     Plaintiffs' Construction Also is Supported by the Nature of the Arrangement and Century Offers no Evidence that the Parties Intended the Policy to Afford Broader Coverage to Hayden than Pinnacle**

Century's construction—that "the named insured" means only Pinnacle—would mean that Pinnacle would not be covered for an injury to a Pinnacle employee, but Hayden would be covered for an injury to a Hayden employee—with the result that the additional insured (Hayden) would be entitled to broader coverage than the named insured (Pinnacle).  See Employers' Liab. Assurance Corp. v. Travelers Ins. Co., 411 F.2d 862, 865 (2d Cir. 1969) ("Travelers [the insurer] has shown no purpose that would be served by a construction that would cover Gordon's [additional insured] liability in negligence if the truss had hit a passerby but would not apply if it hit Gill's [named insured's] employee.  Also Travelers' construction would appear to require a conclusion that Gill [named insured] would not be covered if the injury had been to an employee of Gordon or Griffin [additional insureds], with the result that the extended-coverage clause would reduce the protection of the named insured.").

Century's construction is inconsistent with longstanding principles interpreting additional insured endorsements to general liability policies.  See, e.g., Pecker Iron Works of N.Y., Inc. v. Traveler's Ins. Co., 99 N.Y.2d 391, 393, 756 N.Y.S.2d 822, 823 (2003) ("As cases have

recognized, the well-understood meaning of the term [additional insured] is an entity enjoying the same protection as the named insured." (quotations omitted)); James McHugh Constr. Co. v. Zurich Am. Ins. Co., 401 Ill. App. 3d 127, 132, 927 N.E.2d 247, 252-53 (Ill. App. Ct. 2010) ("Interpreting 'the insured' to mean 'the insured seeking coverage' means that both the named insured and the additional insured are equally subject to the exclusion, that the additional insured's coverage is limited to the same extent as the named insured's. If 'the insured' referred only to the named insured, . . . then the additional insured would receive more protection under the policy because the employer's liability exclusion could never apply to it."); 3 Couch on Insurance § 40:26 (3d ed. 2014); 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 5.04[a], at 403 (16th ed. 2013) ("[T]he scope of coverage provided by an additional insured endorsement is the same as that enjoyed by the named insured."); Mark Pomerantz, Recognizing the Unique Status of Additional Named Insureds, 53 Fordham L. Rev. 117, 133 n.89 (1984) ("[I]t would be unlikely that the parties could have intended to provide the additional named insured with greater coverage than that provided the named insured." (collecting cases)).

Moreover, Century offers no evidence to support a construction that diverges from this principle—such as proof of a substantial premium. See, e.g., 2 Couch on Insurance § 22:47 ("Although the amount of the premium cannot affect the plain terms of the contract, it is a fact to be taken into consideration in construing doubtful clauses in a policy. An insurer may fairly be assumed to intend to limit the risk to the price exacted." (fn. omitted)); 3 Couch on Insurance § 40:26 ("[O]ften, no additional premium is required for adding someone as an additional insured on a policy."); 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 1.03, at 29 ("The size of the premium and the terms of payment may be a factor considered in construing doubtful clauses in a policy."); Mark Pomerantz, Recognizing the Unique Status of

Additional Named Insureds, 53 Fordham L. Rev. at 119-20, 129 ("A party typically becomes an additional named insured pursuant to an agreement obligating the named insured to add the additional named insured to the named insured's pre-existing policy. . . . The contractor's insurer, usually for little or no extra premium, will issue the contractor an endorsement that adds the owner as an additional named insured to the policy in which the contractor is the named insured. . . . The insurer's intent is reflected by the language of both the policy and the endorsement and by the amount of premium charged for undertaking the additional risk." (fn. omitted)).

### 3.   Century's Policy Should be Interpreted in Hayden's Favor

Finally, Century's policy must be interpreted in favor of the insured, Hayden, and against the insurer, Century.  See, e.g., Admiral Ins. Co. v. Joy Contractors, Inc., 19 N.Y.3d 448, 462, 948 N.Y.S.2d 862, 870 (2012) ("[T]he CGL policy's language is ambiguous as to whether the exclusion precludes from coverage any limited liability company not shown as a named insured in the CGL policy's declarations (Admiral's view) or only limited liability companies (if any) acquired or formed during the contract period (the position taken by the owners/developers); consequently, this provision should be construed in the owners/developers' favor."); Merchs. Mut. Ins. Co. v. Rutgers Cas. Ins. Co., 84 A.D.3d 756, 757, 922 N.Y.S.2d 200, 202 (2d Dep't) ("Thus, insofar as the exclusionary language is applied to one subcontractor's potential liability for injuries sustained by an employee of another subcontractor working independently at the same job site, it is not susceptible of only one meaning and, therefore, the exclusion is ambiguous as a matter of law.  As such, the disputed exclusionary clause must be construed against the insurer, Rutgers Casualty." (citations omitted)), appeal denied, 17 N.Y.3d 715, 933 N.Y.S.2d 655 (2011); 2 Couch on Insurance §§ 22:14, 22:19 (3d ed. 2014); 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 1.05, at 53-56 (16th ed. 2013); Mark Pomerantz, Recognizing the Unique

Status of Additional Named Insureds, 53 Fordham L. Rev. 117, 130-31 (1984) ("When the intent of the insurer is in accordance with that of the insureds, the court's construction of the policy should effectuate that intent, and the general rule of construing ambiguous language against the insurer should not be applied so as to circumvent that intent. . . . Conversely, when the intent of the insurer is not in accordance with that of the insureds, the general rule that ambiguities are to be construed against the insurer should be applied.  The result is that when the intents diverge, the intent of the insureds will be given effect.  This conclusion comports with the view that the expectations of the insured should be given great weight and recognizes that an insurer may avoid the rule of strict construction through the use of clear and unambiguous language.  It is not unreasonable to require an insurer to express its intent clearly and unambiguously and to give effect to the intent of the insureds when it fails to do so." (fns. omitted)).

## IV.   CENTURY'S POLICY IS NOT EXCESS OVER ENDURANCE'S POLICY

Century claims that "any coverage that may be available to Hayden is excess over coverage provided to Hayden under its policy issued by Endurance." (Dkt. No. 27: Century Br. at 13.)  Plaintiffs, on the other hand, claim that since "both policies provide that they are excess and neither expressly negates contribution, they will share ratably."  (Dkt. No. 29: Pls. Reply Br. at 7.)

### A.   Legal Standard For Competing Excess Insurance Clauses

Under New York law, when multiple, concurrent insurance policies purport to be excess to one another, their excess coverage clauses are held to cancel one another other out, leaving each insurer to contribute in proportion to its limit amount of insurance.  E.g., U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d 882, 885 (2d Cir. 1988) ("The general rule under New York law is that '[t]here is [a] well-settled equitable right to contribution, where there is concurrent insurance even in the absence of a policy provision for apportionment' and that where each of the policies covering

the risk 'generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance.'" (quoting Travelers Ins. Co. v. Gen. Accident, Fire & Life Assurance Co., 28 N.Y.2d 458, 463, 322 N.Y.S.2d 704, 706-07 (1971); Lumbermens Mut. Cas. Co. v. Allstate Ins. Co., 51 N.Y.2d 651, 655, 435 N.Y.S.2d 953, 955 (1980))), cert. denied, 490 U.S. 1020, 109 S.Ct. 1744 (1989); Osorio v. Kenart Realty, Inc., 48 A.D.3d 650, 652, 852 N.Y.S.2d 317, 320 (2d Dep 't 2008) ("[W]here there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel each other out and each insurer contributes in proportion to its limit amount of insurance.").

"[T]hough it is possible for an insurer to provide 'that it would, in effect, supply only the final tier of coverage,' if other policies similarly purport to provide final-tier coverage, all such insurers would be required 'to contribute ratably' towards any settlement." U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d at 885 (quoting Lumbermens Mut. Cas. Co. v. Allstate Ins. Co., 51 N.Y.2d at 656 n*, 456 N.Y.S.2d at 956 n*); see also, e.g., Philadelphia Indemnity Ins. Co. v. Employers Ins. Co. of Wausau, 318 F. Supp. 2d 170, 172 (S.D.N.Y. 2004) (Lynch, D.J.).

It is equally well-established under New York law that the "general rule of ratable contribution is inapplicable, however, if it 'would effectively deny and clearly distort the plain meaning of the terms of the policies.'" U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d at 885 (quoting Lumbermens Mut. Cas. Co. v. Allstate Ins. Co., 51 N.Y.2d at 655, 435 N.Y.S.2d at 955); see, e.g., Philadelphia Indemnity Ins. Co. v. Employers Ins. Co. of Wausau, 318 F. Supp. 2d at 173 ("[T]he cases that recognize an exception to the rule of ratable contribution, as did Lumbermens itself, concern how to effectuate excess clauses that disclose an intent to trump other, merely general excess clauses."). The purpose of this exception to the general rule, referred to as the "Lumbermens

exception," is to preserve all parties' bargained-for contractual expectations.  See, e.g., Lumbermens

Mut. Cas. Co. v. Allstate Ins. Co., 51 N.Y.2d at 655, 435 N.Y.S.2d at 955 ("[T]he parties to the

Lumbermens contract did not bargain for a ratable contribution with any of the Allstate policies.

This 'Catastrophe Policy' specifically provided coverage in excess of all other coverage available,

including excess coverage.").  Whether ratable contribution would distort the meaning of the policies

at issue depends on "the purpose each policy was intended to serve as evidenced by . . . its stated

coverage . . . as well as upon the wording of its provision concerning excess insurance."  State Farm

Fire & Cas. Co. v. LiMauro, 65 N.Y.2d 369, 374, 492 N.Y.S.2d 534, 538 (1985).

        The effect of the Lumbermens exception is that "an insurance policy which purports

to be excess coverage but contemplates contribution with other excess policies or does not by the

language used negate that possibility must contribute ratably with a similar policy, but must be

exhausted before a policy which expressly negates contribution with other carriers or otherwise

manifests that it is intended to be excess over other excess policies."  State Farm Fire & Cas. Co.

v. LiMauro 65 N.Y.2d at 375-76, 492 N.Y.S.2d at 539; see also, e.g., Farm Family Mut. Ins. Co. v.

Allstate Ins. Co., 179 A.D.2d 965, 966, 579 N.Y.S.2d 207, 208-09 (3d Dep't) ("The Court of Appeals

has made it clear, however, that to qualify as being considered a higher layer of coverage than the

standard excess coverage, such a status must be shown by the presence of plain language in the

policy to that effect establishing whether ratable contribution was bargained for in the policy."),

appeal denied, 80 N.Y.2d 756, 588 N.Y.S.2d 824 (1992).

### B.    The General Rule of Ratable Contribution Applies

        There is no dispute that the Endurance policy provides primary coverage to Hayden.

(Dkt. No. 29: Pls. Reply Br. at 7: "Here, both the Century Policy and the Endurance Policy are

primary policies . . . ." (emphasis in original)); Dkt. No. 32: Century Reply Br. at 5: "The Endurance

Policy simply states that it is excess over any <u>other</u> <u>primary</u> <u>insurance</u>. . . ." (emphasis added)).  It is also clear that the Century policy provides <u>primary</u> coverage to Pinnacle and "additional insured[s]" including Hayden.  (<u>See</u> pages 5-8 above.)  Century, however, maintains that its policy provides only excess coverage as to Hayden, rather than primary coverage subject to ratable contribution with Endurance, because "the Century Policy specifically states that it is excess over other primary pro rata, contributory, excess, contingent; and umbrella policies" and does not expressly contemplate contribution with other insurers.  (Dkt. No. 27: Century Br. at 17.)  Century asserts that this demonstrates that applying ratable contribution would distort the terms of the Century policy.  (Century Br. at 17.)  By contrast, according to Century, "[t]he Endurance Policy simply states that it is excess over any other primary insurance when the insured is an additional insured under the other policy, and the provision expressly contemplates contribution with other insurers."  (Century Br. at 16-17.)  Century asserts that this is sufficient to trigger the <u>Lumbermens</u> exception.  (Century Reply Br. at 5; Century Br. at 17-19.)

Plaintiffs counter that the <u>Lumbermens</u> exception applies only to "true excess" policies that "expressly negate" ratable contribution–which, they argue, the Century policy fails to do.  (Pls. Reply Br. at 6-7.)  As the Second Circuit described it:

> The <u>Lumbermens</u> court determined that the general rule did not apply to three policies at issue before it because the plain language of each demonstrated that the respective parties to each insurance "contract did not bargain for a ratable contribution with any of the [other] policies."  Rather, the court concluded that three tiers of cover had been agreed to on the basis that (1) the first policy merely stated generally that it was excess to other available sources of insurance; (2) the second "was designed specifically to provide coverage in excess of that provided by [the first]," (3) a clause in the second policy stating that the issuer "would not contribute with other collectable insurance 'other than insurance applying as excess to [its] limit of liability,'" essentially "conceded the possibility that another policy could provide coverage in excess of its coverage," and (4) the third policy "specifically provided coverage in excess of all other coverage available, including excess coverage . . . ."

U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d 882, 885 (2d Cir. 1988) (quoting Lumbermens v. Allstate Ins. Co., 51 N.Y.2d 651, 656, 435 N.Y.S.2d 953, 955 (1980) (citations omitted)), cert. denied, 490 U.S. 1020, 109 S.Ct. 1744 (1989).

There is a difference between a primary insurance policy containing an excess other insurance clause and a true excess policy.  A true excess policy (such as the typical umbrella policy) is conditioned on the existence of an underlying primary policy, while a primary policy with an excess other insurance clause is a device by which a primary insurer seeks to limits or eliminate its liability where another primary policy covers the risk, thereby making it secondary coverage.  See, e.g., Seneca Ins. Co., Inc. v. Illinois Nat. Ins. Co., 07 Civ. 11272, 2009 WL 2001565 at *5 (S.D.N.Y. Jul. 9, 2009) ("Under New York law, 'an excess 'other insurance' clause will not render a policy sold as primary insurance . . . excess to a true excess or umbrella policy sold to provide a higher tier of coverage.'" (quoting Sport Rock Int'l, Inc. v. American Cas. Co., 65 A.D.3d 12, 19 n.5, 878 N.Y.S.2d 339, 346 n.5 (1st Dep't 2009)); 15 Couch on Insurance § 220:41 (3d ed. 2014) ("As a rule . . . excess and umbrella policies are regarded as excess over and above any type of primary coverage . . . because umbrella policies are not an attempt by a primary insurer to limit a portion of its risk by labeling it 'excess' nor a device to escape responsibility.");  Scott M. Seaman & Jason R. Schulze, Allocation of Losses in Complex Insurance Coverage Claims § 5:4[e][1] (2013) ("The primary contract must first exhaust because [a true] excess contract, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted.").  The Century policy is a primary and excess other insurance policy, not a true excess policy.

Although neither Lumbermens nor its progeny rely upon the phrase "true excess" in determining a particular purportedly excess insurance policy's tier, plaintiffs are correct that the Lumbermens exception applies only where a policy expressly negates ratable contribution or

otherwise evidences the intent that it be excess over other policies.   Lumbermens v. Allstate Ins.

Co., 51 N.Y.2d at 656, 435 N.Y.S.2d at 955 ("[T]he parties to the Lumbermens contract did not

bargain for a ratable contribution with any of the Allstate policies.   This 'Catastrophe Policy'

specifically provided for coverage in excess of all other coverage available, including excess

coverage." (emphasis added)); see, e.g., U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d at 885 ("The

Lumbermens court determined that the general rule did not apply to three policies at issue before

it because the plain language of each demonstrated that the respective parties to each insurance

'contract did not bargain for a ratable contribution with any of the [other] policies.'"); State Farm

Fire & Cas. Co. v. LiMauro, 65 N.Y.2d 369, 375-76, 492 N.Y.S.2d 534, 539 (1985) ("[A]n

insurance policy which purports to be excess coverage but contemplates contribution with other

excess policies or does not by the language used negate that possibility . . . must be exhausted before

a policy which expressly negates contribution with other carriers, or otherwise manifests that it is

intended to be excess over other excess policies."); Farm Family Mut. Ins. Co. v. Allstate Ins. Co.,

179 A.D.2d 965, 966, 579 N.Y.S.2d 207, 208-09 (3d Dep't) (for an excess clause to establish a

higher layer of coverage than the standard excess coverage, "such a status must be shown by the

presence of plain language in the policy to that effect"), appeal denied, 80 N.Y.2d 756, 588 N.Y.S.2d

824 (1992); Aetna Cas. & Sur. Co. v. Liberty Mut. Ins. Co., 91 A.D.2d 317, 325, 459 N.Y.S.2d 158,

163 (4th Dep't 1983) (applying ratable contribution where "[e]ach policy provides a form of

nonprimary coverage and each by its terms generally purports to be excess to the other" and "neither

policy 'contains language specifically making one an excess insurer over all other excess insurers

covering the same risk,'" but applying Lumbermens exception to a third layer of insurance because

that policy "expressly negate[d] the possibility of contribution with other insurers and manifest[ed]

an intent to be excess over the other excess insurance").

The Endurance policy states that it is primary except that it is excess when "other primary insurance [is] available . . . for which you have been added as an additional insured by attachment of an endorsement" (Ex. K: Endurance Policy at 69; see page 9 above), as is the case here because of the endorsement to the Century policy.  The Century policy's "other insurance" provision provides that the policy is excess "unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part." (Ex. L: Century Policy, Contractors Amendatory Endorsement at 35; see page 8 above.) Both "primary" policies thus purport to be "excess."  The Court agrees with plaintiffs that the Century policy provides primary rather than true excess coverage.  (Pls. Reply Br. at 6: "Despite Century's assertion that contribution is not contemplated by its other insurance provision, the language simply is not there.  The other insurance provision in the Century Policy does not expressly negate contribution.")  See, e.g., U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d at 885 ("a clause in the second policy stating that the issuer would not contribute with other collectable insurance other than insurance applying as excess to [its] limit of liability, essentially conceded the possibility that another policy could provide coverage in excess of its coverage," which supported a finding that the second policy was not excess over the third policy (citations & quotations omitted)); State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d at 375-76, 492 N.Y.S.2d 539 ("an insurance policy which purports to be excess coverage but contemplates contribution with other excess policies or does not by the language used negate that possibility must contribute ratably with a similar policy"); 4 Bruner & O'Connor on Construction Law § 11:173.10 (2014) ("It is important to distinguish between primary policies with 'other insurance' provisions, even those that contain an excess-other insurance provision and true excess policies" because "[a] primary policy with an excess-other insurance clause in not excess

insurance.").   Because both the Endurance and Century policies provide concurrent primary coverage with excess other insurance clauses, their excess clauses cancel one another out and the ratable contribution rule applies.[30/]

Century maintains that the <u>Lumbermens</u> exception does not turn on the distinction between primary and true excess policies.  (Century Reply Br. at 5: "Plaintiffs seek to distinguish the cases relied upon by Century upon the basis that those cases interpret 'true excess' policies.  This is a distinction without a difference.  The analysis remains the same regardless of whether the competing 'other insurance' clauses are between primary, excess or umbrella carriers.")  Even assuming <u>arguendo</u> that Century were correct, applying the <u>Lumbermens</u> exception in Century's favor is inappropriate because it would clearly distort the terms of the Endurance policy.  Endurance's excess clause expressly states that it is excess over "any other primary insurance" to which Hayden has been "added as an additional insured by attachment of an endorsement."  (Ex. K: Endurance Policy at 69-70; <u>see</u> page 9 above.)  Pinnacle added Hayden to the Century policy as an additional insured by attachment of an endorsement.  The plain language of the Endurance policy makes clear that its drafters did not intend for the Century policy to be excess.  <u>See</u>, <u>e.g.</u>, <u>Aetna Cas. & Sur. Co.</u> v. <u>Liberty Mut. Ins. Co.</u>, 91 A.D.2d 317, 325, 459 N.Y.S.2d 158, 163 (4th Dep't 1983) (applying ratable contribution where "[e]ach policy provides a form of nonprimary coverage and

---

[30/]   <u>But see</u> <u>Jeffrey M. Brown Assocs., Inc.</u> v. <u>Interstate Fire & Cas. Co.</u>, 414 N.J. Super. 160, 165-66, 997 A.2d 1072, 1075 (Sup. Ct. N.J. App. Div.) (a policy with excess clause substantially similar to Century's  did not provide primary coverage and was therefore excess over a primary coverage policy with excess clause language substantially similar to Endurance's), <u>cert. denied</u>, 204 N.J. 41, 6 A.3d 443 (2010); <u>W9/PHC Real Estate LP</u> v. <u>Farm Family Cas. Ins. Co.</u>, 407 N.J. Super. 177, 186-87, 196-202, 970 A.2d 382, 387-88, 394-98 (Sup. Ct. N.J. App. Div. 2009) (a policy with excess clause language substantially similar to Century's was excess over a policy with excess clause language substantially similar to Endurance's on the ground that the latter included an express pro rata clause while the former did not).

each by its terms generally purports to be excess to the other" because "neither policy 'contains language specifically making one an excess insurer over all other excess insurers covering the same risk'"); QBE Ins. Co. v. Pub. Ser. Mut. Ins. Co., 102 A.D.3d 442, 443, 958 N.Y.S.2d 103, 105 (1st Dep't 2013) (plaintiff's commercial general liability policy was excess over defendant's where plaintiff's policy stated that it was excess over "any other primary insurance available to you . . . for which you have been added as an additional insured by attachment of an endorsement"); Tishman Constr. Corp. v. American Mfrs. Mut. Ins. Co., 303 A.D.2d 323, 324, 757 N.Y.S.2d 535, 537 (1st Dep't 2003) (there was nothing ambiguous about intent of insurance policy that provided its coverage would be excess where there was "[a]ny other primary insurance available to you . . . for which you have been added as an additional insured by attachment of an endorsement").  Indeed, the Hayden-Pinnacle contract further supports this analysis, since it required Pinnacle to indemnify and hold Hayden harmless for claims arising from Pinnacle's acts or omissions, and to obtain insurance to reflect that.  (Ex. G: Hayden-Pinnacle Master Sub-Contract, Ins. Indemnification Rider; see pages 3-4 above.)[31]

---

[31]   Plaintiffs might have been eligible to take advantage of the Lumbermens exception themselves given the interplay between the additional-insured language in the Endurance policy and the Century policy's statement that it is not excess under these circumstances. See Scott M. Seaman & Jason R. Schulze, Allocation of Losses in Complex Insurance Coverage Claims § 5:4[f] (2013) ("Particularly in the context of construction projects, a policyholder may enter into an agreement whereby it has certain obligations to obtain coverage for and indemnify another party to the contract.  Some courts have held that such indemnity agreements impact the coverage obligations of the parties' respective insurers."); 15 Couch on Insurance § 219:1 (3d ed. 2014) ("[A]n indemnity agreement between the insureds or a contract with an indemnification clause, such as is commonly found in the construction industry, may shift an entire loss to a particular insurer notwithstanding the existence of an 'other insurance' clause in its policy.").  Because plaintiffs only seek ratable contribution from Century  (Pls. Br. at 7), the Court will not explore this possibility further.

If the <u>Lumbermens</u> exception were to apply, Hayden would be left without insurance under either the Endurance or Century policy.  New York law does not allow such a result.  Therefore, the excess over clauses in the two policies must cancel one another out.  <u>See</u> <u>U.S. Fire Ins. Co.</u> v. <u>Fed. Ins. Co.</u>, 858 F.2d at 885 (where "the second [policy] 'was designed <u>specifically</u> to provide coverage in excess of that provided by [the first],'" application of the <u>Lumbermens</u> exception rended the second policy excess over the first policy (emphasis added)); <u>see also</u>, <u>e.g.</u>, <u>Fireman's Fund</u> v. <u>Structural Sys. Tech., Inc.</u>, 426 F. Supp. 2d 1009, 1020, 1029 (D. Neb. 2006) ("The [National Fire] policy also includes, as a condition, an 'other insurance' clause that was originally identical to that discussed above in connection with Great American's policy, but was modified by endorsement to provide: . . . 'This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, or on any other basis; unless the other insurance is issued to the Named Insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.' . . .  The other insurance clause in the National Fire Policy, that provides that the policy's coverage is excess to any other primary coverage, is in direct conflict to the provision in the Great American Policy that provides <u>its coverage is excess to any other primary policy that adds its insured as an additional insured</u>. . . .  If full effect were afforded to all of these provisions, the insured would have no coverage.  Accordingly, the court finds that each of the policies contain mutually repugnant excess insurance clauses and the excess clauses must be disregarded, rendering each insurer liable for a pro rata share of the judgment up to its single-occurrence limits.").

The Court concludes that the Endurance and Century policies share ratably with regard to the underlying Sleszynski state court action.

51

## **CONCLUSION**

For the reasons set forth above, plaintiffs' motion (Dkt. No. 18) is <u>GRANTED</u> with respect to Endurance's claim for a declaratory judgment that Century is obligated to defend and indemnify Hayden in the underlying action, and that the Endurance and Century polices share ratably.  Century's motion (Dkt. No. 22) is <u>DENIED</u> in its entirety.

Counsel are to advise the Court by September 29, 2014 whether there are any remaining issues in the case or that judgment should be entered in accordance with this Opinion.


SO ORDERED.

Dated:          New York, New York
                September 15, 2014




                                              _____
                                              **Andrew J. Peck**
                                              United States Magistrate Judge


Copies ECF to: All Counsel